The opinion of the Court was delivered by
Huston, J.
TMs was an ejectment for houses, lots, &c., in the city and county of Philadelphia; of which a particular description is not necessary. The writ was served on the present plaintiffs in error, who were the defendants named in the writ; and also on sundry other persons who occupied the houses, and whose names the sheriff returned as being in possession: this was under our act of assembly.
Clearly, if we are to judge from the testimony now brought before us, and from the argument of this case when formerly in this Court, the object of the plaintiffs and defendants was to try in this ejectment, whether Isaac Jones, through whom all parties claimed, either as children or grand-children and heirs or devisees, died having made a will, or died intestate. The persons in possession, and on whom, as such, the writ was served, all appeared by several counsel; and all joined in one plea of not guilty.
Since the record was returned, a certiorari was asked and obtained, among other things, to ascertain whether there was an appearance and plea for Dr. Matthews, one of the persons on whom the sheriff served the writ, as being in possession of one of the houses. The return shows that counsel appeared for him by name; this disposes of the sixth error assigned. We cannot go contrary to the record returned; nor look at the affidavits filed on that collateral point, which seems only to have been made since the judgment in the Court below.
The first five matters assigned as errors have not been insisted on, and ought not to have been assigned as errors. When the cause was in this Court last year, none of these matters were alleged; and we have great reason to believe that the writ in due form, with the return endorsed thereon, and the description of the property, here called a declaration, all formed a part of the record: when this writ of error was put into the lower Court, they were not to be found. The counsel filed a new description, before or after the verdict; and it matters not which. Unless where a special plea is drawn by counsel, and filed, the plea, as in this case, is entered on the docket; which docket is for many purposes the record in this state. See Black v. Dobson, (11 Serg. & Rawle, 94).
In some cases the precipe may be material: a mistake of the prothonotary made in drawing the writ may be amended by it; or the date of issuing the writ may in some cases be ascertained by the date of the precipe. It is not usually returned as part ^ie *reC01’d> and I doubt whether it is ever so, unless when brought up on certiorari; or where it has been referred to and read in the Common Pleas, for some purpose. It is not attached to half the records sent up to this Court.
*190 As to there being no issue, after not guilty pleaded, which is the general issue; adding the similiter is merely form. It has, however, been decided in this Court, in New York, in Massachusetts, and in England, that if parties will go to trial on a declaration and plea, and I may add, in some cases, without a plea, neither party will be suffered to object to this on a writ of error; and especially after a former writ of error and a second trial in the Court below on a record in the same state; no objection having been then made. Where any writ or return is lost, the docket entry is the next proof of its former existence, and, as far as it goes, of its contents; and after a former writ of error, and decision on all points to which there was any objection, we will assuredly assume that the parts of the record to which no objection was then taken, were regular, and in every respect legal, and not reverse, now that they are lost, on a supposition that they were defective.
The seventh and eighth errors assigned are, that the writ and issues and verdict and judgment are jointly against different persons, holding under different titles, several properties situated not contiguous to each other.
One sufficient answer to this is, that we have no evidence that the facts are so. No evidence of title in the defendants appears, except by the paper called the will of Isaac Jones. If the jury, under the direction of the Court, had found that paper to be the will of Jones, the plaintiffs had no claim; if it was not his will, the right of the plaintiffs to their parts of each property, as heirs, could not be disputed. And from the evidence given, and from another part of the record, it appears, that the attention of the Court below was not called to the subject-matter of these exceptions. Perhaps I might say, that the exceptions were so few, and so entirely out of view, as that both Court and jury were told there was no other question than whether the paper of 1807 was republished after 1828.
Isaac Jones, on the 13th of March, 1826, had conveyed atll his lands and tenements in this state to Thomas R. Tunis in fee. Mr. Tunis sold certain of those lands and paid off the debts of Jones, and in 1828 reconveyed the residue to Jones. By mistake, it would seem, this ejectment was brought for the lands sold by Tunis, as well as the lands reconveyed to Jones, and of which Jones died seised. After the verdict, which was general, for the plaintiffs, the following agreement was put on the docket.
“ The verdict having been entered in the above case, by mistake, as far as relates to Jacob Ridgway, Thomas Coates, and seven others (naming them) and the lands and tenements owned or *191 in *their possession, it is agreed, that the said verdict shall be' so altered and amended, and the judgments entered thereon, as to be entered for the defendants last named: this agreement not to prejudice the rights of any of the other parties, plaintiffs or defendants.” Signed by the counsel of both parties.
Taking then, this into view, together with the fact, that no evidence was given of any other title in the defendants, than the will, and the Court were not asked to charge on any other subject, so far as we can see, it would be most unreasonable in this Court to receive the statement of counsel as evidence that the defendants held different and distinct titles; and to reverse for what was never brought to the view of the District Court.
But is there any error, if the defendants held by different titles ? The plaintiffs are not bound to know how the defendants hold. We have been referred to the practice of other Courts. In all the cases referred to, the objections were made at the trial, and came up on a case stated. We have a practice on this subject, long and well settled by our predecessors at nisi prius and in bank. A defendant in ejectment may take defence for a part only of the land claimed by the plaintiff; but if he has taken a general defence, and entered into the common rule, he cannot, at the trial, confess lease, entry and ouster for part only of the tenements laid in the declaration, but must confess for the whole. Wilson v. Campbell, (1 Dall. 126). And if a defendant takes a special defence for part only, and another tenant who had taken defence for the residue gives it up on the trial, the first, who had excluded it will not be permitted to defend or show title as to it. 3 Yeates, 169. Both these cases decide principles calculated to produce a fair trial, and to prevent surprise.*
Though a plaintiff cannot compel defendants having several interests in different property, to submit to a joint trial, yet defendants may conclude themselves by their own act in pleading jointly; yet each may show title to' all or part, and both or either may recover his costs in case of success. (4 Yeates, 134, &c.) It is expressly said in White v. Pickering, (12 Serg. & Rawle, 435,) that an ejectment may be brought against several defendants having separate titles, who may defend themselves separately, on their respective titles. In this case, the defendants pleaded jointly, and gave in evidence a paper purporting to be a will, which, if found to be a valid will, defeated the claim of the plaintiffs to all; and they showed no separate defence or title, nor asked for a separate trial.
Two objections are assigned to the charge. The first has not been much urged. This Court had decided, that the conveyance by Isaac Jones to Tunis in 1826, and reconveyance in 1828, were a revocation of the will of 1807. The judge remarked, that testimony be so equally poised, as to occasion difficulty: and he *read the opinion of this Court on the former writ of in which it is that the evidence to establish a republication ought to be clear and satisfactory to establish the intention to republish, as well as the identity of the writing referred to; and something was said of the law making an equal and just distribution of an estate, where there is no will. The paper book then says, “the judge then summed up the evidence and recapitulated some of the main arguments of the counsel on both sides. In the course of the remarks on this part of the case, he said, in substance, as follows: ‘It has been argued by the plaintiff’s counsel, that as it appears from Mr. Bunker’s testimony, that Isaac Jones intended at one time to make a new will, so it may be inferred from various matters in evidence, that he did so after the reconveyance by Tunis, and that it was destroyed or lost without the consent or agency of the maker of it; and that he died under the impression that such a new will existed; and that the will of 1807 was fraudulently preserved and produced on the part of the defendants. The judge referred to several parts of the testimony, on which an effort had been made to sustain this argument; and told the jury they would decide for themselves as to these matters, as in regard to the other facts of the case; for he said they were entitled to consideration ; and if the jury adopted the views of the plaintiffs’ counsel, upon this subject, there was an end of the cause.’ The judge then called the jury’s attention to the reply which the defendants’ counsel had made on this point, recapitulated their arguments, and told the jury it was for them to determine between the parties.” The objection is to that part of the charge which relates to the plaintiffs’ facts’ and arguments; and this is selected as error; but the last part, which states that he referred to the defendant’s facts and arguments, is not brought to our notice. Now if the first was objectionable alone, it is certainly not so when taken in connection with what immediately followed.
The counsel have cited and relied on what was said in Clark v. Morton, (5 Serg. & Rawle, 235). It will be seen, that the object of the party in that case was to prove, that a will was made; to prove the disposition of property made by it; and the names of the devisees; and all this by parol — no person having ever seen a written will. Very different is the object in the present case. The will of 1807 was not present when any of the declarations which are alleged as a republication were used: it *192 is very questionable, whether some of those declarations could be referred with certainty to the paper before the Court. The plaintiffs offered evidence tending to show, that other wills had been made subsequent to that of 1807; to show that when, in his latter days, the testator mentioned his will and the disposition of his property, it was entirely different from that in the paper produced; and that with this paper in the power and possession of the defendants, two of them had sworn there was no will, and had taken letters of administration as in a case of intestacy; *all this, not to set up another will, and claim under it, but to the Court and jury, that ■ the relied on as a republication of the will of 1807, did not apply, and ought not to be applied to that paper, but to some other and subsequent will, which, somehow does not appear.
The judgment is affirmed.
Judgment affirmed.
Cited in note, 5 Wharton, 321.
Cited by the Court, 14 Wright, 474.

 See 1 Harris, 435 ; 7 Wright, 525 ; 1 P. F. Smith, 218.