## J. H. E. ACKLEY v. A. A. TINKER.

APPRENTICE; *Jurisdiction of Probate Court; Practice.* In 1879 an order was made by the probate court of Allen county upon the petition of the superintendent of the county poor-house, which, reciting that A. was a minor and a charge upon the county, bound him as an apprentice to T. *Held,* That proceedings for binding out apprentices are at least *quasi* judicial, and it appearing that A. was in fact a minor and a charge upon the county, that the probate court had jurisdiction, and its order could not be impeached in a collateral attack except for fraud; and also that such order could not be impeached by parol testimony that it was in fact made without the swearing of any witness or the receiving of any evidence. *Held, further,* That notice to or consent of the parents of A. was not essential to the validity of such order.

*Original Proceedings in Habeas Corpus.*

PETITION for a writ of *habeas corpus,* filed in this court by J. H. E. Ackley, September 21, 1881. The facts are sufficiently stated in the opinion, filed herein December 9, 1881.

*G. P. Smith*, for petitioner.

*J. H. Richards*, for defendant.

The opinion of the court was delivered by

BREWER, J.: This is a petition for *habeas corpus*, brought by the petitioner, charging that he is illegally restrained from his liberty by the defendant. The petition alleges that the petitioner is a minor, aged about eight years; that his parents are both living, and keep house in Allen county, owning a small farm upon which they live, and a small amount of personal property; that they are abundantly able to take care of themselves and their children; that they always kept house and provided for their children until during a short time in the winter and spring of 1879, when, his father being a farmer and losing his crops and being temporarily sick, as was also his wife, the mother of this petitioner, they were obliged to and did receive aid from the county poor-fund, and were for a time kept at the county poor-farm; that after recovering health his father procured work by the month and left the poor-farm, his wife and two children, including the plaintiff, still remaining at the farm; that after he had gone to work, intending as soon as possible to provide a home for his wife and children, and on the 24th day of April, 1879, without the knowledge or consent of either of his parents, and without his own consent, the superintendent of the county poor-farm filed an unverified petition with the probate judge, representing that the plaintiff was a county charge, and that the defendant was willing to take him as an apprentice until he arrived at the age of eighteen years: whereupon the probate court bound him out as an apprentice to said defendant, and the charge is that the probate court had no power to make such an order, and that therefore the apprenticeship is illegal and void, and the petitioner entitled to be relieved from his present restraint. No complaint is made of cruel treatment by defendant, no charge of unfitness to have the care and custody of a child, nothing in short which tends to show that a regard for the

welfare of the child compels a discharge from his present custody. The only charge is, that as a matter of law the apprenticeship proceedings were void, and the restraint therefore illegal and void. The single question, then, is one of jurisdiction. Upon the face of the record, does it appear that the probate court had the power? If it had, this adjudication cannot be questioned in this collateral way. The findings and decisions of the probate court upon matters within its jurisdiction are in the nature of judicial determinations, and cannot be impeached collaterally, except for fraud in obtaining the same. (*Shoemaker v. Brown,* 10 Kas. 383.) The subject-matter of binding out apprentices is within the jurisdiction of the probate court, the proceedings therein at least *quasi* judicial, and if in any given case jurisdiction has attached, the determination is within the rule which forbids a collateral attack upon a judgment. Jurisdiction, as we have stated, over the matter of apprenticeships, is given to the probate court. The exercise of this jurisdiction does not necessarily depend upon notice to or consent of the parent; the state has the power to provide for the care and custody of minor children independent of their parents. (*People, ex. rel., v. N. Y. Juvenile Asylum,* 2 Thomp. & C. 475.) In some cases the statute provides for the consent of the parents, in others not. The absence of this consent in these latter cases, the entire ignorance of the parent of proceedings actually had, does not invalidate the power or render the proceedings void. Perhaps the natural right of the parent to the custody of his minor child may not be destroyed by proceedings to which he is not a party, or to which he has not given consent. Such seems to have been the idea of the supreme court of Wisconsin, from the opinion in a case involving the validity of the act providing for committing vagrant children to the custody of an industrial school. (*Milwaukee Industrial School v. Supervisors of Milwaukee County,* 40 Wis. 328. See also *Howry v. Calloway,* 48 Miss. 587.) But no such question arises in this case; the parent is not here asserting his rights to the custody of his child. The

petition is that of the child claiming that it is illegally restrained, and the question is not whether, under these proceedings, the right of the father is destroyed, but whether any right of custody has been given to the defendant. Now the statute provides (Comp. Laws 1879, ch. 5, § 6) that "When any poor child is or may be chargeable to the county, or shall beg for alms, . . . it shall be lawful for the probate court to bind such child an apprentice." And ch. 79, § 28, also provides: "It shall be the duty of the overseers of the poor of the different townships and cities, and also of the superintendents of the county asylums, to bind out such poor children as fall under their care and charge from time to time." Turning to the record in this case, we find that both the petition and the order in the probate court show that the minor was a county charge, and that the petitioner was the superintendent of the county asylum. Upon this record, then, the facts appear which by the statute give the court power to act, and if all the facts which the statute requires as conditions of action by the probate court are shown by its record to exist, its jurisdiction also is shown. A similar question was before the supreme court of Alabama, in the case of *Owen v. The State*, 48 Ala. 328, and in respect to it the court uses this language: "As to the objection to the jurisdiction of the probate judge to make said indentures, said § 1450 declares that 'the judge of probate of each county may bind out as apprentices the children of any person unable to provide for their support, until the age of twenty-one years, if a male, and eighteen, if a female.' This section confers on probate judges jurisdiction of the subject-matter. The only fact necessary to give a probate judge jurisdiction under said section, of any particular case, is, that the person or persons to be apprenticed or bound out are the children of persons who are unable to provide for their support. This jurisdictional fact the probate judges, respectively, must determine for themselves, when they assume to act in any particular case; and their judgment in the premises can only be reviewed in a direct

proceeding for that purpose, and cannot be impeached in any collateral proceeding."

It is alleged in the *habeas corpus* petition that the parents had no knowledge or notice and gave no consent, but the statute does not provide for either; it contemplates independent action by the superintendent of the poor-house whenever any child becomes a county charge, and the validity of the court's action in such a case in no manner depends upon the wishes or knowledge of the parents. That the child was then a county charge, appears not merely from the probate records, but is admitted in the *habeas corpus* petition. True, it is averred that it was only temporarily such charge, but in no case, perhaps, can it be positively shown that a child who has parents living will remain a permanent county charge. All that the statute requires is that it *be*, not that it will remain such charge during its minority unless bound as an apprentice. Of course, great care should be shown by superintendents of the county poor-house and by probate courts, to guard against the binding-out of children who only temporarily need county assistance, and perhaps such proper care and examination were not given in this case; but the absence of it does not render the proceedings void. A certificate of the probate judge has been filed in this case, stating that this order of apprenticeship was made without any testimony supporting the petition. We cannot consider this certificate as evidence. You cannot impeach a formal judgment of any court having jurisdiction, by parol testimony that the court rendering the judgment did not have before it proper or sufficient testimony to justify such judgment. In other words, you cannot try in a collateral way the question once adjudicated. These considerations lead to the conclusion that the order of apprenticeship was legally made and is binding on the petitioner. This compels judgment for the defendant, yet the petitioner is not without remedy, if as a matter of fact he ought to be returned to the custody of his father. Section 13 of the act concerning apprentices gives the probate court power, when circumstances require it, to discharge an apprentice from his apprenticeship,

and if upon proper inquiry before such court it shall appear that the prior order was made under any circumstances which show that it ought not to have been made, or that from a change in the situation or condition of the parents and child, the order of apprenticeship should be set aside and the child restored to his parents, it can be so ordered, and any ruling of the court thereon can be reviewed by appeal.

Judgment will therefore be entered for the defendant.

All the Justices concurring.