No. 27,784.

HARRIET JONES et al., by Their Next Friends, JOSIE B. LAPHAM and
FLORA J. ALLEN, et al., *Appellants,* v. FRANK E. JONES et al.,
*Appellees.*

(265 Pac. 66.)

SYLLABUS BY THE COURT.

1. CONTINUANCES—*Grounds.* Under the circumstances disclosed in the opinion,
it was not error to refuse the application for a continuance.

2. INFANTS—*Action by Next Friend—Dismissal of Action on Appeal.* Under
sections 60-406 and 60-3317 of the Revised Statutes, an action prosecuted
by the next friends of minors may be dismissed by the supreme court after
the action has been tried in the district court, judgment has been rendered
in favor of the defendants, and an appeal has been taken to the supreme
court, if it appears that it is not for the benefit of the minors that the action
be prosecuted to final judgment.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed
March 10, 1928. Action dismissed.

*Stephen H. Allen, Otis S. Allen, George S. Allen,* all of Topeka, *John W.
Lapham,* of Chanute, and *H. L. Burgess,* of Olathe, for the appellants; *Robert
Stone, George T. McDermott, Robert L. Webb* and *Beryl L. Johnson,* all of
Topeka, of counsel.

*James F. Getty,* of Kansas City, and *E. A. Taylor,* of Kansas City, Mo.,
for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: Plaintiffs Harriet Jones, Julia Jones and Amelia
Jones, infants, by their next friends, Josie B. Lapham and Flora J.
Allen, and Harriet Jones and Julia Jones, by Otis S. Allen as guard-
ian of their property, prosecuted this action against Frank E. Jones,
individually, Frank E. Jones as administrator of the estate of Harry
W. Jones, as administrator of the estate of Velma L. Jones, and as
guardian of the person of Amelia Jones, a minor, and Albert R.
Jones individually, and Albert R. Jones as former guardian of the
property of Harriet Jones, Julia Jones and Amelia Jones, minors, to
obtain an accounting for the—

"Moneys, securities and property which have come into their possession or
into the possession of either of them or which should have come into their
possession or either of them; that said defendants be charged with the value
of all such money, securities and property, and credited with only such ex-

Accounts and Accounting, 1 C. J. p. 612 n. 52. Continuances, 13 C. J. p. 123
n. 14; 6 R. C. L. 544. Guardian and Ward, 28 C. J. p. 1214 n. 57.

penditures as have been lawfully made by them for the benefit of said plaintiffs, and for a judgment against said defendants and each of them in favor of said plaintiffs and each of them for all sums of money, securities and property of said plaintiffs or either of them for which said defendants or either of them is accountable, and for the costs of this action, and such other and further relief as is consistent with equity."

The plaintiffs asked:

"That a receiver be now appointed of all the property of said plaintiffs, Harriet Jones, Julia Jones and Amelia Jones, of every kind and nature wherever situate, and that such receiver be authorized and directed to forthwith take into his possession and keeping all of said property in the possession of said defendants or either of them, either as administrator, guardian, or in any other capacity, and of all real property wherever situate belonging to said plaintiffs or either of them, and that he collect the rents, income and profits arising from all such property, account therefor to the court."

The plaintiffs further asked—

"That the defendant Frank E. Jones be removed from the guardianship of the person of said Amelia Jones, and that the defendant Albert R. Jones be removed from the guardianship of the property of said Amelia Jones."

Judgment was rendered in favor of the defendants, and the plaintiffs appeal.

W. D. Morrison, of Olathe, Kan., was appointed referee to take the evidence, make findings of fact and conclusions of law, and report them to the court. He made exhaustive findings of fact and conclusions of law and filed them with the court. Those findings of fact and conclusions of law were approved by the court, and judgment was rendered in accordance therewith.

To understand the reasons for the conclusions reached by this court, it is necessary to summarize a part of the findings of fact and to state additional facts shown by the evidence. The findings of fact showed the following: Harry W. Jones and Velma L. Jones were husband and wife. Harry W. Jones died intestate February 2, 1920, and Velma L. Jones died intestate February 5, 1920, leaving as their only heirs at law their children, Harriet Jones then twelve years old, Julia Jones then ten years old, and Amelia Jones then five months old. Those children are the plaintiffs in this action. Soon after the death of the father and mother, Mrs. Frank Brown, the grandmother of the plaintiffs and mother of Harry W. Jones; Frank Brown, her husband; Albert R. Jones, Frank E. Jones and Roy Jones, brothers of Harry W. Jones and uncles of the plaintiffs; and Otis S. Allen, husband of Flora J. Allen, a sister of Harry W. Jones and an aunt of the plaintiffs; and Mrs. Albert R. Jones, the

wife of Albert R. Jones, met and held a conference concerning the care of the plaintiff infants and of the property which they had inherited from their father and mother. That property amounted to approximately $1,650,000. At that conference it was agreed that Albert R. Jones should be appointed guardian of the property of the plaintiffs; that Frank E. Jones should be appointed guardian of their persons; that Frank E. Jones should be appointed administrator of the estates of Harry W. Jones and of Velma L. Jones; that Otis S. Allen should be attorney for the administrator and the guardians; that Mrs. Frank E. Jones should be paid $1,000 a month for looking after the plaintiffs and taking care of them; that Frank E. Jones, as administrator of the estates of Harry W. Jones and Velma L. Jones, should receive $75,000 for his services as such administrator; and that Otis S. Allen should receive $75,000 for his services as attorney for the administrator and the guardians. Upon proper application, the probate court of Johnson county appointed the administrators and guardians as outlined in the conference. Albert R. Jones, as guardian of the property of the plaintiffs, gave bond in the sum of $1,000,000. That bond was approved by the probate court. Albert R. Jones, guardian of the property of the plaintiff, filed with the probate court reports for the years ending June 1, 1921, June 1, 1922, June 1, 1923, and June 1, 1924. He prepared a report for the year ending June 1, 1925, but that report was not filed.

The evidence showed that on April 17, 1925, Harriet Jones and Julia Jones appeared in the probate court of Johnson county with Otis S. Allen and requested that he be appointed guardian of the property of each of their estates, and that Josie B. Lapham be appointed guardian of their persons. An order appointing Otis S. Allen guardian of the property and Josie B. Lapham as guardian of the persons of said minors Harriet Jones and Julia Jones was made. From that order Albert R. Jones as guardian of the property of Harriet Jones and Julia Jones, and Frank E. Jones as guardian of their persons, appealed to the district court. Those appeals were heard in September, 1925, and on November 19, 1925, the court in that proceeding made findings of fact and rendered judgment as follows:

"That on the 17th day of April, 1925, the said appellees, Otis S. Allen and Josie B. Lapham, with the said minors, Harriet Jones and Julia Jones, went to the office of the probate court of Johnson county, Kansas, and the said Harriet Jones and Julia Jones, who were at that time, respectively, sixteen years of

age and fifteen years of age, presented to the said court their applications for the appointment of the appellee Otis S. Allen as the guardian of their property, and of the appellee Josie B. Lapham as guardian of their persons; that no notice of said applications and no notice of any hearing thereon was ever served upon the appellant Albert R. Jones, guardian of the property of said minors, or upon the appellant Frank E. Jones, guardian of the persons of said minors. That neither of said appellants in fact had any notice of such applications or of any hearing thereon. And that neither of said appellants, Albert R. Jones and Frank E. Jones, was present or represented at said proceeding; that the said probate court thereupon approved said applications, and thereupon made an order purporting to remove the appellant Albert R. Jones as guardian of the property of said minors and appointing in his stead the appellee Otis S. Allen, and an order purporting to remove the appellant Frank E. Jones as guardian of the persons of said minors and appointing in his stead the appellee Josie B. Lapham; that the said appellees, Otis S. Allen and Josie B. Lapham, each took an official oath, but did not otherwise legally qualify as such guardians, respectively, of the property and the persons of said minors, and no letters of guardianship were issued until a month later, and there was no change in the situation of any of the parties.

"That on the 20th day of April, 1925, the said Harriet Jones and Julia Jones, minors, appeared in the said probate court of Johnson county, Kansas, and orally applied to said court for leave to withdraw their applications for the appointment of new guardians, and that said probate court took no action on said application. That at the trial of these causes, after the appellees had presented their evidence and rested their cases, the said minors Harriet Jones and Julia Jones being present in person, again orally presented their applications for leave to withdraw their former applications for a change of guardians. That said minors testified at the trial of these causes that they desired to withdraw their applications for the appointment of new guardians, and that again, after the appellants had produced their evidence and rested their cases, the said minors renewed their applications for leave to withdraw said former applications for a change in guardian.

"That the applications of said minors Harriet Jones and Julia Jones to the probate court on April 17, 1925, were not made fairly and understandingly, and that they were under undue influence at the time, and the probate court should have granted their request to withdraw their said applications.

"The court further finds that the said applications of Harriet Jones and Julia Jones, minors, for leave to withdraw their former applications for a change of guardians should be granted and sustained, and it is therefore ordered, adjudged and decreed by the court that said applications for leave to withdraw are granted and sustained.

"It is further considered, ordered and adjudged by the court that the appeals of said appellants should be sustained, and said appeals hereby are sustained; that the order of the probate court of Johnson county, Kansas, purporting to revoke the letters of Albert R. Jones, as guardian of the property of said minors Harriet Jones and Julia Jones, and appointing in his stead Otis S. Allen as guardian of the property of said minors, be reversed, vacated, set aside and annulled.

Jones v. Jones.

"And it is further considered, ordered and adjudged, that the order of said probate court, purporting to revoke the letters of Frank E. Jones as guardian of the persons of said minors, and appointing in his stead said Jossie B. Lapham, be reversed, vacated, set aside and annulled."

No appeal was taken from that judgment; it became binding and conclusive.

This action was commenced May 11, 1925. The order of the district court appointing W. D. Morrison referee was made January 24, 1926, which was after the appeal in the other proceeding had been determined. The report of the referee was filed December 26, 1926. The plaintiffs filed a motion "to set aside and vacate parts of the report of the referee and to make additional findings," and filed a motion for a new trial. The defendants filed a motion for judgment on the findings of fact made by the referee. On January 5, 1927, the plaintiffs filed their motion to continue the hearing of the motions concerning the report of the referee until after the term of office of the then district judge should expire, which would occur on January 10, 1927. On January 6, 1927, the motion to continue was denied and the other motions were argued. In the forenoon of January 10, 1927, Jabez O. Rankin, then judge of the district court, denied the plaintiffs' motions and decided this action as has been herein indicated. Garfield A. Roberds took the oath of office and assumed the duties of judge of the district court of Johnson county at noon on January 10, 1927.

At the present time Harriet Jones is approximately twenty years old, Julia Jones approximately eighteen years old, and Amelia Jones approximately eight years old. In another year Harriet Jones will attain her majority. In three years Julia Jones will attain her majority.

1. The plaintiffs argue that it was error to deny their motion for a continuance until after the term of office of Jabez O. Rankin had expired. He was judge of the district court during all of the proceedings had in that court in this action. He was familiar with them. The evidence was voluminous, but not so voluminous that it was impossible for him to make a proper examination of it during the remainder of his term of office. The findings of the referee were easily understood. It was within the discretion of the trial court to grant or refuse to grant a continuance. He refused and there was no error in so doing.

2. The defendants say:

"We have examined numerous decisions of this court and we are unable to find a single case where this court has approved interference with the statutory jurisdiction of the probate court, where the guardianship had not terminated in some manner, except where a final settlement was provided for, as in cases of lunatic wards, so that, aside from the grounds stated above, we believe that the probate court has the right to settle guardian's annual accounts; that the statute provides the remedy for error on the part of the probate court; and it was incumbent upon the plaintiffs to pursue that remedy by appeal, and having failed to do so, as to such contentions, this court will not entertain them."

In 28 C. J. 1214 it is said:

"Probate courts have no jurisdiction of accountings and settlements by guardians, except as provided by statute, and authority to appoint guardians does not give a court power to compel them to account. But probate courts, or courts exercising probate jurisdiction, are very generally vested by statute with jurisdiction of such proceedings. On the other hand, courts of equity have inherent jurisdiction to require accountings by guardians, and will exercise such jurisdiction when there is no adequate remedy at law, or where the powers conferred by statute upon probate courts prove insufficient."

The plaintiffs cite *Shoemaker v. Brown*, 10 Kan. 383; *Klemp v. Winter*, 23 Kan. 699; *Manley v. Park*, 62 Kan. 553, 64 Pac. 28; *Mitchell v. Kelly*, 82 Kan. 1, 107 Pac. 782; *Hawk v. Sayler*, 83 Kan. 775, 112 Pac. 602; *Martin v. Duckworth*, 96 Kan. 717, 153 Pac. 505. *Shoemaker v. Brown*, supra, was an action which concerned the administration of the estates of deceased persons, and was commenced after final settlement had been made in the probate court. *Klemp v. Winter*, supra, was an action commenced by the plaintiff, after she became of age, against her former guardian and the surety on his bond to recover money fraudulently kept by the guardian. *Manley v. Park*, supra, was an action by an executor. *Mitchell v. Kelly*, supra, was an action by the guardian of a minor against an administrator of a deceased former guardian. *Hawk v. Sayler*, supra, was an action against the principal and surety on a guardian's bond commenced by the plaintiff after reaching majority. *Martin v. Duckworth*, supra, was an action by the administrator of the estate of a lunatic to recover on the bond of the lunatic's guardian for mismanagement of his ward's estate. None of these cases has any application to the action now under consideration.

The statute concerning decedent's estates provides that the executor or administrator shall make final settlements in the probate court. A judgment of that court approving a final settlement of an executor or administrator and discharging him upon distribution

of the estate becomes a final judgment, which cannot be impeached collaterally except for fraud. (*Shoemaker v. Brown,* 10 Kan. 383; *Musick v. Beebe, Adm'r,* 17 Kan. 47, 53; *Collamore v. Wilder,* 19 Kan. 67, 80; *Smith v. The Eureka Bank,* 24 Kan. 528, 530; *Ackley v. Tinker,* 26 Kan. 485, 487; *Watkins v. Mullen,* 62 Kan. 1, 4, 61 Pac. 385; *Loveland v. Hemphill,* 122 Kan. 577, 586, 253 Pac. 606; *Quinton v. Kendall,* 122 Kan. 814, 822, 253 Pac. 600.)

In *Kothman v. Markson,* 34 Kan. 542, 9 Pac. 218, this court said:

"While the district court has jurisdiction over certain matters relating to the estates of deceased persons, it is an equitable jurisdiction, and in its exercise the court will be governed by the rules of equity, and the plaintiff, therefore, cannot successfully invoke the jurisdiction of the district court to enforce the payment of a claim against the estate of an intestate, where the statute has provided that the relief sought may be obtained in an ordinary legal proceeding in the probate court, and no special circumstances requiring the aid of equity are disclosed." (Syl. ¶ 3. See, also, *Shoemaker v. Brown,* 10 Kan. 383; *Stratton v. McCandless,* 27 Kan. 296; *Gafford, Guardian, v. Dickinson, Adm'r,* 37 Kan. 287, 291, 15 Pac. 175; *Hudson v. Barratt,* 62 Kan. 137, 61 Pac. 737; *Hill v. Honeywell,* 65 Kan. 349, 69 Pac. 334; *Knox v. Knox,* 87 Kan. 381, 385, 124 Pac. 409; *Martin v. Duckworth,* 96 Kan. 717, 153 Pac. 505; *Sparr v. Surety Co.,* 99 Kan. 481, 162 Pac. 305; *Talbot v. Wulf,* 122 Kan. 1, 251 Pac. 438.)

*Hill v. Honeywell,* supra, *Martin v. Duckworth,* supra, and *Sparr v. Surety Co.,* supra, were actions against guardians of insane persons. These cases hold that probate courts have jurisdiction over the final settlement of insane persons which makes them analogous to the cases concerning the settlement of estates by executors or administrators.

Otis S. Allen was not the guardian of the property of Harriet Jones or Julia Jones, and could not prosecute this action as guardian. His failure to be appointed guardian left the action prosecuted by Josie B. Lapham and Flora J. Allen as next friends of the plaintiff minors. It should not be forgotten that Josie B. Lapham had been appointed guardian of the persons of Harriet Jones and Julia Jones on the futile attempt to have Otis S. Allen appointed guardian of their property, nor that Flora J. Allen is the wife of Otis S. Allen. Section 60-406 of the Revised Statutes provides that an action of an infant must be prosecuted by his guardian or next friends. There was a guardian for the property of the plaintiffs. It was his duty to prosecute actions in their behalf against all third persons. Probably such an action could not be prosecuted by a next friend so long as the

guardian was acting for the plaintiffs, but this action was prosecuted by the next friends against the guardian of the property as well as against the administrator of the estates of Harry W. Jones and Velma L. Jones. It was the guardian's business to prosecute the action against the administrator of the estates if a cause of action existed.

The findings of the referee showed that the property of the minors had been increased by the guardian of the property from $1,650,000 to approximately $2,518,643.50 in a period of about seven years. The estates consisted quite largely of oil properties and the increase has been principally from the proceeds from those properties. The property belonging to the estate of Harry W. Jones had been accumulated by him in association with Albert R. Jones, who was familiar with all of it. The court takes judicial notice of the fact that property of that character belonging to the estate is of a somewhat precarious nature. A change in the management thereof would be very liable to produce substantial loss.

The circumstances surrounding the commencement of this action demand scrutiny. In *Talbot v. Wulf,* 122 Kan. 1, 3, 251 Pac. 438, this court said:

"R. S. 60-406 just referred to provides that when an action of an infant is commenced by a next friend, the court has power to dismiss if the action be not for the infant's benefit, and may substitute a next friend of the court's own choosing. A court is not obliged to tolerate an action instituted on behalf of an incompetent by a mere busybody, or which does not appear to be for the best interests of the incompetent; but a court is not obliged to dismiss an action for vindication of some important, legally protected interest of an incapable because the action was not commenced in due form."

Annual settlements made by a guardian in the probate court do not bind the ward. He can recover whatever is due him when he reaches the age of majority. (*Crowell v. Ward,* 16 Kan. 60; *Klemp v. Winter,* 23 Kan. 699; *Mitchell v. Kelly,* 82 Kan. 1, 3, 107 Pac. 782; *Hawk v. Sayler,* 83 Kan. 775, 112 Pac. 602; *Lohoff v. LaShell,* 109 Kan. 515, 200 Pac. 295.)

At the time this action was commenced Harriet Jones, Julia Jones and Amelia Jones were infants and could not prosecute the action themselves in their names, but each, when she becomes twenty-one years of age, can prosecute an action for herself against her guardian to recover from him whatever should be paid to her at that time.

Section 60-307 of the Revised Statutes reads:

Jones v. Jones.

"If a person entitled to bring an action other than for the recovery of real property, except for a penalty or a forfeiture, be at the time the cause of action accrued under any legal disability, every such person shall be entitled to bring such action within one year after such disability shall be removed."

When the guardianship of Otis S. Allen failed, this action should have been dismissed. This court does not desire to say that the judgment of the district court was correct, because matters are disclosed by the record which show that the guardians may have committed acts for which they may be liable to their wards when final settlement is made with them. The court desires to avoid making this a binding settlement either for or against the guardians or their wards. It is assumed that the probate court has required the guardian of the property to keep his bonds absolutely good and sufficient. It is not for the best interests of these minors that this action be prosecuted to final judgment.

Section 60-406 of the Revised Statutes reads:

"The action of an infant must be brought by his guardian or next friend. When the action is brought by his next friend, the court has power to dismiss it, if it is not for the benefit of the infant, or substitute the guardian of the infant, or any person, as the next friend."

Section 60-3317 of the Revised Statutes provides that in any case pending before the supreme court it "shall render such final judgment as it deems that justice requires or direct such judgment to be rendered by the court from which the appeal was taken."

Under sections 60-406 and 60-3317 of the Revised Statutes, the judgment of the district court is set aside, and this action is dismissed without prejudice to a future action by Harriet Jones, Julia Jones or Amelia Jones, when any one of them shall have attained her majority, or by a future guardian to be appointed for any one of them to succeed Frank E. Jones or Albert R. Jones as guardian. The costs are assessed against Josie B. Lapham and Flora J. Allen. The cause is remanded to the district court to carry this judgment into effect.

HOPKINS, J. (dissenting): I cannot concur in the dismissal of this case, a dismissal based upon a proposition neither presented to nor considered by the trial court, a dismissal which denies a review of numerous alleged errors in an action of accounting submitted to a referee on request of the defendants themselves and tried out in all its details. Whatever the result might be, the litigants on both sides, in my opinion, are fairly and reasonably entitled to a review.

A brief statement of some pertinent facts is necessary and proper to an understanding of the issues. Both father and mother of three children died within a week in February, 1920. The children, three girls, were respectively eleven and ten years and five months old. Two brothers of the deceased father took charge of the estate and the minors. One was appointed administrator of the decedent's estate and guardian of the person of the minors. The other was appointed guardian of the estate of the children. They entered upon their respective duties. Eventually, in 1925 this action was filed in the district court charging the two brothers with waste, misappropriation and the conversion to their own use of the children's estate. A demurrer to the petition by the administrator was sustained and the administrator dropped out. The case proceeded against them as the two guardians. They filed an answer denying the charges of maladministration. They also filed a motion for the appointment of a referee. The trial court sustained their motion and January 4, 1926, entered an order finding that "the cause will involve complicated accounts and is a proper case for the appointment of a referee." The case was sent to the referee for trial. The extent of the trial before the referee is indicated by the fact that the stenographer's bill alone was more than $4,000. The plaintiffs contend that they proved all the averments of their petition by the records, books and documents of the defendants themselves and that none of the essential facts so proved were or could be controverted; that the defendant did not even undertake to controvert them, but sought to evade the legal consequences by obscuring the issues in the case by the introduction of a great mass of irrelevant testimony. A few of the outstanding claims of error may be noted. First, that the referee found that Albert R. Jones as guardian received moneys belonging to the plaintiffs totaling $1,505,291.31; that he also received from F. E. Jones, administrator, further sums distributed from the estates, not included in the above but shown by the books of the administrator and guardian and testified to by the auditor, amounting to $240,616.55, or a total of $1,745,907.86.

The plaintiffs further say, substantially, "that the referee found that the guardian of the property has received this amount, but made no findings as to the total amount of the disbursements, and struck no balance of account due; that instead of showing what the guardian has done with the money, . . . he has made only a sweeping disposition of the whole account to the effect 'that all moneys

belonging to said minors, and coming into the hands of the guardian have been fully and completely accounted for in the annual reports made and filed in the office of the probate judge; that said reports are in proper form and in good order, and have been accepted and approved by the said probate court; that all of the moneys belonging to said minors  .  .  .  have been properly and accurately accounted for.' "

The plaintiffs say they moved the referee to strike out this latter finding as contrary to the evidence; that he overruled this motion; that they then moved the court to set it aside for the same reason, but the court also refused the motion. They assert "that it is very readily and easily shown that the finding is contrary to the evidence in every particular."

For what good reason can this court decline to investigate, consider and pass upon this important question? The plaintiffs, in their brief, set out and analyze the figures found by the referee and claim "that they show a balance due from the guardian wholly unaccounted for of more than $358,000." Is it not the duty of this court to investigate this claim? The plaintiffs contend that in addition to the above shortage that the guardian claimed credit, and the referee by inference approved his claim for the following improper items, in round numbers:

| | |
|---|---|
| (a) Alteration and addition to house of minors................. | $6,500.00 |
| (b) Erection of a new home for minors........................ | 270,000.00 |
| (c) Salary to the wife of Frank E. Jones, guardian of the persons of the minors ......................................... | 71,000.00 |
| (d) The living expenses for care and maintenance of the minors, and of the family expenses of Frank E. Jones, wife and three children ........................................ | 108,000.00 |
| (e) Furniture for new home, purchased from companies in which guardian and his wife are partners...................... | 50,000.00 |
| (f) Purchase of preferred stock in Lotus Oil Company, in which Albert R. Jones owns a controlling interest of common stock, | 100,000.00 |
| (g) Exchange of valuable stock of manufacturers Fuel Supply Co. for Shawnee Oil Co., speculative stock................... | 48,000.00 |
| (h) Purchase of Washington Hotel, Kansas City, Mo. (including assumption of mortgages).............................. | 250,000.00 |

That of the above items, (a), (c) and (h) are investments which were made without obtaining any order or permission from the probate court; that some of them were shown as items of credit in reports filed after the investments were made; that some have never been reported to the court. I express no opinion on the question

whether the guardian was justified in paying his sister-in-law a salary of $1,000 a month over and above all expenses for care and maintenance of his wards (two of them absent in college nine or ten months of the year); in abandoning a home, originally valued at over $26,000 on which he had already expended over $6,000 for improvements, and investing $270,000 of his ward's money in a mansion; in purchasing as guardian preferred stock in companies where he held the majority of the common stock, and in investing the funds in encumbered real estate of doubtful value in another state (if he did all these things as claimed), but I do express the view that it is the bounden, lawful duty of this court to diligently and carefully inquire into all these alleged wrongs and find out the right.

This court, in my opinion, commits error when the dismissal is attempted to be based on the ground that the case was not filed in probate court, or because Mrs. Allen and Mrs. Lapham are acting as next friends of the minors. The opinion states that the case should have been dismissed when the guardianship of Otis S. Allen failed, presumably because Mrs. Allen and Mrs. Lapham were acting as next friends of the minor children. Whether Mrs. Allen and Mrs. Lapham were proper next friends of the minors appears not to have been raised or considered in the trial court. That court recognized their fitness so to act by proceeding with the case. This court has held times without number that questions (other than jurisdictional) will not be considered here when not raised in the district court. Dismissal on that ground, therefore, cannot be sustained. Nor does the question of dismissal of the case because the district court had no jurisdiction appear to have been raised or considered. The majority opinion assumes to dismiss this case at this time under the provisions of R. S. 60-406 and R. S. 60-3317. The later section authorizes this court to render such final judgment as it deems that justice requires. How can this court render such a judgment without a review of the case?

The majority opinion recognizes the fact that the district court had jurisdiction of the case by holding, in the first paragraph of the syllabus and corresponding part of the opinion, that error was not committed in refusing a continuance, and then proceeds by implication or in effect to dismiss the case because not filed and tried in the probate court. The intricate questions involved, both of law and of fact, make it appear most unreasonable to hold or even suggest that the probate court with its recognized limitations could with

any degree of accuracy or satisfaction to any of the litigants have tried the case.

The district court not only had jurisdiction of all the matters involved, but it is the only court having general law and equity powers adequate to afford the accounting required. This is so well settled as not to admit of serious argument.

"Originally matters of account proper for an action of account were cognizable exclusively at law, but the ancient common-law action of account being considered imperfect in its processes and inadequate in its remedies, jurisdiction in such matters was early assumed by courts of equity, and is no longer the subject of doubt." (1 C. J. 612.)

". . . Courts of equity have inherent jurisdiction to require accountings by guardians and will exercise such jurisdiction when there is no adequate remedy at law." . . . (28 C. J. 1214. See, also, *Shoemaker v. Brown,* 10 Kan. 383; *Klemp v. Winter,* 23 Kan. 699; *Manley v. Park,* 62 Kan. 553, 64 Pac. 28; *Mitchell v. Kelly,* 82 Kan. 1, 107 Pac. 782; *Bailey v. Bailey,* 67 Vt. 494, 48 Am. St. Rep. 826.)

The probate court has power to remove guardians, but it has no power to adjudicate their accounts, to render judgments for money and issue execution thereon, to stay waste, nor has it the power to reach out through a receivership to recover dissipated assets. The district court, with full law and equity powers, is the only tribunal adequate to a proper disposition of this case.

"The district court possesses both law and equity powers which may be exercised in the same proceeding. It has general jurisdiction to investigate accounts and to ascertain and declare balances due, and it possesses the common-law powers always exercised by chancery courts to settle guardian's accounts. . . .

"The guardian is a managing agent for his ward. Nobody is interested in his conduct except the ward, and his duty is primarily to account to the ward rather than to the court. This fact is made clear by the omission from the statute of any provision for a final settlement as of the estate of a deceased person." (*Mitchell v. Kelly,* 82 Kan. 1, 3, 107 Pac. 782.)

R. S. 60-406, on which this court bases its decision, provides that "when the action is brought by his [the infant's] next friend, the court has power to dismiss it." What court? Certainly not an appellate court—not a reviewing court on its own motion, where the question of maintenance or dismissal of the suit has neither been raised nor considered by the trial court. Certainly not by a reviewing court when no error is predicated on such a question and it is neither presented nor argued by the litigants. The provisions of R. S. 60-406 apply to procedure in the trial court, not to this court.

Except in certain specified instances, this court considers the proceedings of the trial court and reviews errors or alleged errors found therein. This has been repeated so many times in the decisions of this court that there should be no question concerning it. In *In re Burnette,* 73 Kan. 609, 85 Pac. 575, it was said in the opinion:

"In this state, except in certain specific matters, the supreme court is a court of error and review. In criminal cases it may reverse, affirm or modify the judgment appealed from, or may order a new trial. In civil cases it may affirm, reverse, vacate, or modify, grant new trials, and, if the facts be found or agreed to, may designate the character of judgment to be entered. But in all appellate cases the supreme court considers the conduct of the lower court. Error must be assigned as inhering in the rulings, orders and judgments appealed from. The supreme court decides the questions thus presented as they arise upon the record, and issues its mandate to the tribunal from which the appeal was taken to carry the judgment rendered into execution." (p. 614.)

In *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281, this language was used:

"Under the constitution the appellate jurisdiction of this court is limited to the review of errors committed by the trial court from which the record comes. It cannot consider cases *de novo* and decide them according to its own notions of the law and evidence. It cannot take new evidence or pronounce any judgment except that the trial court did right or wrong in whole or in part. It cannot direct what judgment the trial court shall enter unless the facts be found or agreed to. It does not have the constitutional power to do generally what ought to have been done by judge and jury at the trial, and so end the litigation, and the legislature cannot under the constitution, confer such power upon it." (p. 744.)

In the instant case no error is alleged on any question of failure to dismiss in the trial court.

"On appeal, the supreme court's jurisdiction is exclusively appellate—for the consideration and determination of errors alleged to have been committed in trial courts—and error cannot be predicated on matters not presented to the trial court; and, to uphold the constitutionality of section 580 of the civil code, such interpretation of it must be given as will not confound the appellate jurisdiction of the supreme court with its original jurisdiction." (*Schwandt v. Ballentine,* 103 Kan. 296, 173 Pac. 926. See, also, *State, ex rel., v. Telephone Co.,* 115 Kan. 236, 223 Pac. 771, and cases cited at page 270.)

I fear the result of the decision in this case. "'Twill be recorded for a precedent, and many an error by the same example will rush into the state."

I am authorized to say that Chief Justice Johnston joins in this dissent.