SARAH A. SMITH, *et al.*, v. THE EUREKA BANK.

FINAL SETTLEMENT OF EXECUTRIX, *When Conclusive; Notice; Continuance; Jurisdiction.* An executrix duly published notice of final settlement of the estate at the April term, 1876. At that term the matter was formally continued to the July term, and at this another continuance was ordered to the October term. No entry was made upon the record at either the October or January or April terms succeeding, but at the July term, 1877, the final settlement was approved, and the executrix discharged from further control of the estate. *Held,* In an action upon the official bond of the executrix for misfeasance in office, that such final settlement was, as to all matters included within it, conclusive as against this collateral attack; and that, however irregular and erroneous the action of the probate court may have been in approving the final settlement at that late day, and without further notice, it had not lost jurisdiction by delay; and therefore its adjudication could not be held void.

### *Error from Greenwood District Court.*

ACTION brought by Wm. Martindale and two others, partners doing a banking business as *The Eureka Bank,* against *Sarah A. Smith* and three others, (sureties,) upon her bond, as executrix under the will of W. C. Waybright, deceased. Trial by the court at the May Term, 1880, and findings and judgment for the plaintiff, for $5,532.06 and costs. The defendants bring the case to this court. The opinion states the facts.

*Phenis & Harlan,* and *Scott & Lynn,* for plaintiffs in error.

*Clogston & Martin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on the bond of an executrix. The following are the important facts: On the 28th day of January, 1872, W. C. Waybright died, testate, leaving a widow, now Sarah Ann Smith, the above plaintiff in error, to whom by the provisions of his last will and testament his entire property was given, subject to the payment of his debts. On the 26th day of February, 1872, the will was

admitted to probate as the will and testament of said W. C. Waybright, with Sarah Ann Waybright the widow, and W. L. Sears, as executors of the will, who qualified by filing the bond sued on in this action. On the same day, said Sarah Ann Waybright appeared in open court and elected to take under the will. On the 23d of March, 1872, the executors returned into the probate court of Greenwood county an inventory of the personal property of the estate, amounting to $3,977.16, and the following real estate, to wit: the south half of the southeast quarter of section 2, and the north half of the northeast quarter of section 11, township 27, range 11, east, containing one hundred and sixty acres. On the 18th day of January, 1873, the executors filed in said court a partial settlement, charging themselves with the personal property of the estate, amounting to $4,227.81, and giving themselves credit for the amount paid out, $703.24; and on the same day W. L. Sears resigned, and his resignation was accepted by the court, leaving Mrs. Waybright alone in charge of the estate. On the 9th day of October, 1873, the defendant in error, the Eureka Bank, obtained a judgment against the estate in the probate court, for the sum of $3,196.03, with 12 per cent. interest from said date until fully paid; which was by the court classed as a fifth-class claim. On the 16th day of March, 1876, publication notice was made for the final settlement of the estate at the April term, 1876, of said court. On June 13, 1876, an account and statement as and for a final settlement were filed by the executrix, Sarah Ann Smith, in the probate court. On the 26th day of June, 1876, the hearing of the final settlement was continued to the first day of the next term of the court. On July 12, 1876, the hearing was again continued, and to the first day of the next term of the court. No further entry appears on the record of the court, until July 13, 1877, when the final settlement was approved by the court. There were other claims allowed against the estate, and all classed as fifth-class claims, except $167.58, which was allowed as a second-class claim.

34—24 KAS.

Now, upon these facts the first question that arises is, as to the effect of the final settlement. It is not doubted that a final settlement regularly made upon due notice has the force and effect of a judgment. (*Shoemaker v. Brown,* 10 Kas. 383; *Musick v. Beebe,* 17 Kas. 47.) "It is a direct adjudication that the estate is fully administered, and that means either that all the debts are paid, or that all the assets are exhausted. It implies that the administrator has received, not merely all the money he admits in his statement, but also no more. In other words, that he has fully accounted for all that he has received or ought to have received, and that so far as it was sufficient, he has used it in the discharge of the debts."

Where suit is brought upon an executor's or administrator's bond for malfeasance or misfeasance, and a final settlement is set up as a defense, the inquiry involves a collateral attack upon such final settlement, and mere irregularities, such even as would be sufficient for reversal in proceedings in error, will not avoid its force. It is like any other judgment when thus attacked. If the court had jurisdiction, it will be sustained, errors in the proceedings notwithstanding. Though a court of limited and special jurisdiction, the judgments of a probate court are as authoritative and conclusive as those of the district or any other court of general jurisdiction. The probate court of Greenwood county was the court in which this estate was properly administered, the one in which a final settlement was properly to be made. The court had a general jurisdiction and control of the estate; and if the final settlement had been made and approved at the term named in the notice, there would be little or no question but that such settlement would have been a bar to this action. But the contention is, that because not made at that term, nor at the term to which the consideration of the matter was continued, and not till more than a year thereafter, the court lost jurisdiction, and that no final settlement could then be made without a new notice. Plaintiffs in error offered to show by parol, that the settlement was not approved at the term to which it was continued

upon the request of defendant in error, and that the latter took the settlement for examination and held it for a year and then returned it to the court, with the statement. that it had no objection thereto, and that thereupon it was approved, but the district court refused to permit such testimony, and held the parties bound by the record as it stood. Taking the case, then, as it stands upon the record, did the probate court lose jurisdiction by a failure to enter a formal continuance from term to term until the order of approval? There can be no question of the power of the court to order a continuance, or that such continuance carries with it the notice, so that if formally continued, no new notice would be necessary. Every court, except where limited by statute, has power to continue proceedings before it from term to term. (*Masters v. McHolland*, 12 Kas. 17.) This is one of its inherent powers. In *Life Ins. Co. v. Twining*, 19 Kas. 367, it was decided that a motion for a new trial in the district court did not become defunct by a failure to act upon it at the term at which it was filed, or to enter a formal order of continuance, but that it passed over for hearing at the subsequent term. Kindred in principle is the decision in *Bond v. White*, ante, p. 45, in which it was held that a case once legally commenced continues in existence until some affirmative action discontinuing it. In other words, the idea is that where jurisdiction once attaches, and the action of a court is invoked, the jurisdiction remains until that action is had, or the application therefor withdrawn. Does the same principle obtain in this case? Those rulings were in reference to proceedings in the district court, but why, in the absence of statute limitations, are they not applicable to all courts? Upon what principle can it be held that a district court holds jurisdiction from term to term, while a probate court under precisely similar circumstances loses it? Each is a court of record. The methods of acquiring jurisdiction may differ, but jurisdiction when acquired is as absolute and complete in one as in the other. Each has power to continue. The right of dismissal exists in each. In case of delay or refusal by either

Smith v. The Eureka Bank.

to act, a party has the same means of compelling action. Suppose the court refuses to act, is jurisdiction lost and the right to act gone? If there be no refusal, but simply a failure to act, a mere neglect of the court, does that send either party out of court? And if the wrong or omission of the court does not oust jurisdiction, does mere *laches* of the party making the application? Must he press for a ruling under penalty of losing the right to a ruling by delay? Where no ruling is asked by either party, is not each guilty of *laches,* and can one claim the benefit thereof as against the other? But say counsel: Does the law contemplate that executors may give notice that final settlement will be made at a time certain, then refuse and delay making such settlement for more than one year thereafter, then without further notice come into said court, make final settlement and get their discharge without the knowledge or consent of the creditors? In one sense of that question, we reply unhesitatingly, no — the law contemplates no delay. It means that every case, every application in whatever court brought, shall be speedily tried and determined. It encourages promptness — oftentimes makes rights hinge thereon. But the question here is not as to the error in the court's action, but as to its power to act. It might properly have required further notice. Perhaps the error was sufficient to have justified a reversal. Unless the statute requires action at the first term, or unless in the nature of things a failure then to act determines the jurisdiction or ends the proceeding, action at a subsequent term is within the power of the court. The question is very different from that which would have arisen if no notice had ever been given. Then it might be argued that the court never had jurisdiction; now it is conceded that it had, but it is claimed that it lost it; and this, not because it dismissed the opposite parties from court, or dismissed the application, but simply because it did not then act upon it. It is no uncommon thing for cases to remain in the district court for a great length of time, going over from term to term without any formal continuance. Frequently orders are made in the

absence of the adverse parties and without special notice to them. We have had occasion to reverse many cases for errors in this respect; but such orders were not made without jurisdiction, were not void, so as to be challenged collaterally. It may be said that in most cases special notice is served on the adverse party, while here only a general notice is required to all interested of the intended application; but this bears upon the question of error rather than of power. If the legislature deem such a notice sufficient to bring the adverse parties into court, that is the extent of our inquiry. When once in, their rights are those of parties in court — no more and no less. The legislature has made some provision for the relief of those who may not know of the exact time when such applications will be heard. Sec. 158 of the executors' and administrators' act gives a party who is absent, and has no actual notice, six months in which to file exceptions and have the settlement opened. This, with the remedies of appeal and error, it has deemed sufficient to protect the rights of all parties. Ordinarily it would seem that these were ample. In this very case the administration of the estate was continued for over five years. If the executrix was guilty of malfeasance or misfeasance during that time; if she failed to pay over the moneys in her hands, or to convert any property, real or personal, into money, there was ample time and abundant opportunities to punish the wrong, and enforce the payment of claims.

It follows from these considerations, that the probate court had not lost jurisdiction of the matter of the final settlement of the estate by its failure to act at the term named in the notice, or at that to which a final continuance of the proceeding was had; and if it had jurisdiction, then such final settlement is a bar to this action. The question of malfeasance or misfeasance is *res adjudicata.*

The judgment of the district court will be reversed, and the case remanded for a new trial.

All the Justices concurring.