# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Henry H. Sheip et al., trading, etc., Appellants, v. Price, Page & Co.

*Practice, C. P.—Discretion to quash writ—Act of 1869.*

The court has discretionary power to quash a writ of attachment under the act of 1869 upon extraneous evidence that the affidavit and bond were not filed upon the day the record shows they were filed.

*Record imports verity—When it may be supplied or corrected.*

A record imports absolute verity and, as a general rule, it should be so regarded in practice. It is not on every occasion that resort should be permitted to affidavit and depositions to contradict the record or explain it away. When it is lost or destroyed or error has intervened and the due administration of justice demands that it should be supplied, amended or reformed, it can and should be done in the appropriate and orderly way.

*Records—Power of court to control—Presumption of verity.*

Every court of record is the guardian and judge of its own records, it is clothed with full power to control and inquire into them and set them right if incorrect, but when a court considers a record without attempting to reform same in an appropriate and orderly way, every presumption of verity must be accorded such record and apparent alterations and inter-lineations made by the prothonotary should be construed as mistakes corrected as soon as made rather than as a tampering with a record, which would be unlawful.

*Practice, C. P.—Records not to be impeached inferentially.*

It is error to quash a writ of attachment, on allegations impeaching a record, by an affidavit alleging alterations thereof, while permitting the

record to stand. The proper practice would be for the court to inquire, as it had power to do, into the impeachment of the record and amend or correct it if tampered with, and upon the record if amended quash the writ if warranted. A record may not be inferentially impeached.

Argued Oct. 13, 1896. Appeal, No. 96, Nov. T., 1896, by plaintiffs, from order of C. P. No. 2, Phila. Co., March T., 1896, No. 343, making absolute rule to quash attachment. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Attachment under act of March, 1869. Rule to quash attachment.

The facts sufficiently appear from the opinion of the Superior Court.

*Error assigned* was the order of the court making rule to quash the attachment absolute.

*W. Horace Hepburn*, for appellants.—It is respectfully submitted that a public record, such as the prothonotary's record in this case, is not open to such an attack. Such a record is conclusive and cannot be affected by extraneous evidence. This is a settled principle in this state, as will be seen by reference to the following authorities: MacGeorge v. Chemical Mfg. Co., 141 Pa. 575; Bennethum v. Bowers, 133 Pa. 332; Cumberland Co. v. Boyd, 113 Pa. 52; Iron Works v. Hutchinson, 101 Pa. 359; Kleckner v. Lehigh Co., 6 Wh. 66; Zion Church v. St. Peter's Church, 5 W. & S. 215; Crawford v. Stewart, 38 Pa. 34. That a defendant may object to defects in the process, its teste or its return before appearance, but not afterwards, has been repeatedly decided in this state, as will be seen by reference to the following leading authorities: MacGeorge v. Chemical Company, 141 Pa. 575; Zion Church v. St. Peter's Church, 5 W. & S. 215; Sherer v. Easton Bank, 33 Pa. 138; Dyer v. Walker, 40 Pa. 157–160; Kemerrer v. Markle, 3 Pa. Dist. Repts. 652; 1 Am. & Eng. Ency. of Law, p. 182, etc.

*E. Clinton Rhoads* and *I. Hazleton Mirkil*, for appellees.

OPINION BY RICE, P. J., November 16, 1896:

This is an appeal from an order making absolute a rule to show

cause why an attachment issued against the defendants under the act of March 17, 1869, (P. L. 9) should not be quashed. The rule was granted upon the application of the defendants and the trustee of certain judgment creditors supported by affidavit of the trustee that, although the writ purported to have been issued on the 29th day of February, 1896, the surety on the bond was not approved, and the affidavit and bond were not filed until March 2, 1896, " as by reference to the record more fully appears," and " that while the said record in said case has been changed so as to make it appear that said affidavit was filed and said surety approved and said bond was filed on the 29th day of February, 1896, yet to deponent's personal knowledge the contrary is true and the change of date upon the record is clearly apparent." No depositions were taken in support of these allegations.

The writ bears teste February 29, 1896, and shows no alteration. The continuance docket shows that the affidavit was filed and the writ issued on February 29, 1896. The præcipe for the writ bears date February 29, 1896, but the indorsement thereon as well as on the affidavit and bond is as follows :

                    Feb. 29,
" Filed ~~Mch.~~ 2, 1896 Hunter pro Prothy." The jurat to the affidavit for attachment is as follows : Affirmed and subscribed

                    February,
                d    ~~Mch.~~
before me this 29 day of ~~February~~ 1896 :

                    " JAS. W. FLETCHER,
                              " Deputy Prothonotary."


The jurat to the affidavit of the surety on the bond is as follows : Subscribed and affirmed before me ~~March 2,~~ Feb. 29, 1896 :

                    " JAS. W. FLETCHER,
                              " Dep. Prothonotary."


The number of the action indorsed on the præcipe appears to have been first written 381, March T., 1896, and then changed to 343, March T., 1896. No evidence was given to show when, or by whom, these changes of the dates and number originally written or stamped on the papers were made.

In the absence of a rule of court, such as is in force in some of the counties of the commonwealth, the plaintiff's omission

to file a counter affidavit cannot be construed as an admission of the facts alleged in the defendant's affidavit. Nor can we assent to the proposition, that as the court has discretionary power to quash a writ of attachment under the act of 1869 upon extraneous evidence that the affidavit and bond were not filed upon the day the record shows they were filed, therefore it is to be presumed, contrary to the fact, that the court had before it such evidence. There is no analogy between quashing a writ upon such grounds and granting summary relief in foreign attachment, where the defendant is a resident or the property is not subject to foreign attachment, or setting aside a sheriff's sale. In the latter cases no contradiction of the record is involved, while in the case in hand there is. " In theory the record imports absolute verity, and as a general rule, it should be so regarded in practice. It is not on every occasion that resort should be permitted to affidavits and depositions to contradict the record or explain it away. When it is lost, or destroyed or error has intervened, and the due administration of justice requires that it should be supplied, amended or reformed, it can and should be done in the appropriate and orderly way : " Rice v. Constein, 89 Pa. 477. So it may be remarked here, if there was an unauthorized alteration of the record, the court had ample power to correct and restore it to its original condition, and then the defendants would have been in a position to ask that the writ be quashed without impeachment of the record. But whatever, in general, may be the power of the court to quash writs upon extraneous evidence of the falsity of the record of some precedent action, it is manifest that this particular case came before the court to be determined by the record alone. Both parties, the plaintiffs as well as the defendants, appealed to the record to sustain their respective contentions. No depositions having been taken and it not being claimed, even, that the court had before it any proof of the facts except what the record discloses, it is to be presumed that it came to the conclusion it did from an inspection of the record, and not from a mere ex parte affidavit, which had served its purpose when the rule was granted, nor from any personal recollection of the judges concerning the facts recorded. The case comes before us in the same way, and we have the same judicial knowledge of the facts recorded as the court below. The inter-

pretation of the record is a question of law and not a mere matter of discretion. If the record shows that the affidavit and bond were filed and the writ was issued on February 29, and that the latter was served on the defendant, then, without correcting the record, it was error to quash the writ; and the action of the court below, being in the nature of a final judgment, is reviewable: Sharpless v. Ziegler, 92 Pa. 467; Biddle v. Black, 99 Pa. 380; Pontius v. Nesbit, 40 Pa. 309; Grieb v. Kuttner, 135 Pa. 281. We come then to the main question which, it seems to us, involves legal principles of some importance.

The act of March 17, 1869 (P. L. 9), as amended by the act of May 24, 1887 (P. L. 197), provides that the writ shall be made returnable on the first return day after the issuing thereof, and that proof of the fraudulent acts shall be made by affidavit and a bond filed before the issuing of the writ. If a return day intervene between the issuing of the writ and the return day named therein, it is ground for quashing: Parks v. Watts, 112 Pa. 4; Williamson v. McCormick, 126 Pa. 274. (Whether the rule is the same where the act of 1878 applies is immaterial in the present inquiry). It is quite as irregular and contrary to law to make the writ returnable on the day it issues. This writ was made returnable on the first Monday of March (March 2, 1896), and if it was issued on that day, it was the duty of the court to quash it, upon the defendant's motion. But is this essential fact shown by the record? The primary evidence of the issuing, service and return of a writ is the writ itself: Vincent v. Huff, 4 S. & R. 298. The præcipe, it is true, is part of the record, and a mistake made by the prothonotary in drawing the writ may be amended by it: Jones v. Hartley, 3 Wh. 178. So also upon writ of error, where the question was whether the summons had issued ten days before the return, and the summons did not show the date of issue or service, it was held that the præcipe might be resorted to for the purpose: Fitzsimons v. Salomon, 2 Binn. 436. But whether, in a collateral proceeding, or upon a motion to quash, or upon appeal, the file mark on the præcipe is better evidence of the date of issue than the teste of the writ is quite a different question. Be that as it may, it is clear that where the writ is free of interlineations, alterations and erasures, and is tested on a certain day, the legal presump-

tion that it was issued on that day is not overcome by an apparent alteration of the date of filing first written or stamped on the præcipe.

But although the writ was issued on February 29, yet, if the affidavit and bond were not filed until March 2, the writ issued without authority; and, as the latter date was apparently first stamped on these papers and was then canceled and the former date interlined, it is argued that it was incumbent on the plaintiff to explain these alterations, and that in the absence of such explanation the presumption is that the date of filing first indorsed on the papers was the true date. A record is a written memorial made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said, or done. Bouv. L. Dict. "Every court of record is the guardian and judge of its own records. It is clothed with full power to control and inquire into them, and to set them right if incorrect. They are placed in the custody of an officer . . . . whose duty it is to preserve them pure and regular; who is sworn to perform that duty, and required to give security; and who is at all times subject to the supervision of the court. For any criminal alteration of the record, he, and all concerned, would be subject to infamous punishment by the act of 1700, as well as by the payment of double damages sustained. These are the precautions which the law provides for the faithful keeping of the records; and under these precautions, it gives full faith and credit to them, and will not allow their verity to be questioned. Omnia præsumuntur rite et solemniter esse acta:" Hoffman v. Coster, 2 Wh. 453, 469. This enunciation of familiar and well settled principles is particularly appropriate here, because it was made in a case where the record offered in evidence bore on its face appearance of alteration. As between the parties to the suit, and upon error or on the hearing of any motion in the suit, in which the question arises collaterally, the date of filing a paper is to be determined by the record. All the presumptions are that the officer has made a true record of that act. It is an act in which the party participates in no way, and after the paper is delivered to the officer it remains in his exclusive custody and control. It is much to be deplored that an interlineation, an alteration, or an erasure should ever appear upon a judicial record, but it

would be intolerable to hold that a party in no way responsible for the keeping of the records must explain it or be deprived of the rights which the record was intended to give him. If he must do that in this case he must do it in any form of proceeding in which he might desire to use the record as evidence, and at any length of time after the act recorded. In many cases this would be an impossibility. If one takes an instrument bearing on its face evidence of alteration, it is not unreasonable to require him to prove that the alteration was made before execution or with the consent of the other party, for he is not bound to take such a paper, and when he has taken it the law presumes that he not only satisfied himself of the innocence of the transaction, but that he provided himself with the proofs of it to meet a scrutiny he had reason to expect: Simpson v. Stackhouse, 9 Pa. 186. But it is not so with a record which the party neither makes nor has the custody of. The cases cited by the appellees' counsel relate to private writings and do not apply to a record of judicial proceedings. As between the parties to the suit, the presumption, which the law raises in favor of innocence and the integrity of records, is not so far overcome in the present case by the apparent changes made in recording the date of filing as to cast on the plaintiff the burden of proving by extraneous evidence that they were made at the very time the record was made, and that the record as it stands is true. Taking the record as a whole, the presumption, in this proceeding, is, that in indorsing the date of filing on the bond and affidavit the prothonotary made a mistake of date which he corrected as soon as made, rather than that he wrongfully antedated the writ, altered the date of filing the præcipe, the affidavit and the bond to correspond therewith, and followed this up by making false entries in the continuance docket. However strong the suspicion which may have been excited by an inspection of these papers, it was the duty of the court to give the record the benefit of the presumption that it was always in the condition it now appears to be: Adams v. Betz, 1 W. 425; Hoffman v. Coster, 2 Wh. 453.

A word should be added as to the erasure and interlineation in the jurat to the affidavit. The act of 1869 provides that in case of personal service of the attachment on the defendant, or if he shall appear to the action, the court shall proceed in the

case in like manner as in a case of summons for debt regularly issued and duly served. It was decided in Biddle v. Black, 99 Pa. 380, that an affidavit which neither set forth specifically the fraudulent acts of the defendant, nor was made in the words of the statute, and which did not describe the kind of property and was wholly silent as to the time the merchandise was purchased was defective. "It was error, however, to quash the writ. There had been personal service on the defendant. While the property was justly released, yet the suit goes on : Sharpless v. Ziegler, 92 Pa. 467." If defect in the substance of the affidavit is not a valid reason for quashing the writ after service and appearance, an interlineation or erasure in the jurat attached thereto by the prothonotary or his deputy cannot be. We are not called upon to decide whether, if unexplained, it would be a valid reason for dissolving the attachment, and we express no opinion upon that question.

The order quashing the writ is reversed and a procedendo awarded.