No. 33,356

E. GASTON, Administrator of the Estate of Arthur B. Collins, Deceased, *Appellee,* v. GEORGE C. COLLINS *(Defendant),* ALLEN H. MOTES and CARL H. HARTMAN, *Appellants.*

(72 P. 2d 84)

Opinion filed October 9, 1937.

*Frank A. Lutz* and *A. E. Jordan,* both of Beloit, for the appellants.

*Leon W. Lundblade,* of Beloit, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover a money judgment against the defendant sureties on a guardian's bond.

The record consists of a petition, an amended petition, an answer and cross petition, an amended reply, a supplemental answer, a second amended reply, summarized statements concerning certain exhibits in these pleadings, and copies of letters more or less pertinent—from all of which, with the help of the briefs, the essential facts of the case may be stated as follows:

On December 31, 1926, one Arthur B. Collins, of Mitchell county, an ex-soldier, was adjudged to be insane, and on January 1, 1927, his brother, George C. Collins, defendant herein, was appointed guardian of his estate by the probate court of Mitchell county. Defendant gave bond signed by himself and his mother. Arthur Collins had some money which the defendant guardian loaned without the approval of the probate court, to wit:

(1) On August 7, 1931, he loaned $325 to Norman Wehl, taking a note therefor.

(2) On September 21, 1931, he loaned $1,365 to Norman Wehl, taking a note therefor.

In 1932, Arthur Collins, the ward, became entitled to certain pension moneys from the United States government, and it required defendant to give an additional guardian's bond for the faithful administration thereof. The probate court made an order accordingly, and in obedience thereto George C. Collins, as principal, and Allen H. Motes and Carl H. Hartman, as sureties, executed the required bond, dated May 12, 1932, in the sum of $2,000, and the probate court approved it the same day.

Thereafter defendant continued to handle his ward's funds about as he had theretofore done:

(3) On August 7, 1933, he accepted a new note from Norman Wehl in payment of the earlier one for $325 dated August 7, 1931.

(4) On February 21, 1933, he made a loan of $1,467.38 to Norman Wehl, taking a note and chattel mortgage therefor.

(5) On August 7, 1933, he made another loan of $370.50 to Norman Wehl, taking a note therefor.

On October 4, 1933, defendant George C. Collins filed in the probate court his verified final account as guardian, tendered his resignation, and asked to be discharged and that his bondsmen be relieved of liability. Whether this final account was approved and his resignation formally accepted and his request to be discharged as guardian allowed are contested matters in this lawsuit. The accuracy of the record, so far as it bears on these questions, is challenged.

However, on October 4, 1933, the probate court *orally* accepted defendant's resignation as guardian, and on the same day E. Gaston was appointed to serve in his stead.

The next matter shown on the record is Exhibit I, as follows:

"ORDER OF DISCHARGE

"Now, on this 10th day of May, 1934, comes George C. Collins, guardian of Arthur B. Collins, insane, and presents the foregoing final report, and asks that the same may be approved, and an order discharging him from the trust, and the release of his bondsmen; and the same having been carefully examined is found to be a just and true account of his guardianship; the same is therefore approved, and it is ordered that he pay over to the said newly appointed guardian all of the property of said Arthur B. Collins, insane, the balance due, as shown by said report, taking his receipt therefor, and, on filing the said receipt in this court, that he be discharged from the trust and his bondsmen released from liability.

"Whereupon, comes George C. Collins, guardian, and files herein the receipt of said ———— for the sum of money due him as shown by the final report of said guardian, as heretofore ordered, and he is hereby discharged as guardian, and his bondsmen released from further liability, this 10th day of May, 1934.                                   J. M. RODGERS, *Probate Judge.*"

On October 12, 1934, the new guardian, E. Gaston, executed to defendant a receipt "for the balance due" as shown by defendant's final report as guardian, and this receipt was filed in the probate court.

Subsequently E. Gaston, as guardian, with the knowledge and approval of the probate court, filed an action against Norman Wehl in the district court of Mitchell county to recover on the notes given by him evidencing the loans of money made to him by Collins, guardian, as narrated above. During the pendency of that action Arthur B. Collins died; E. Gaston was appointed and qualified as administrator of his estate, and the action against Norman Wchl was revived in the name of E. Gaston, administrator, as substituted plaintiff.

On February 15, 1935, the present action was begun against George C. Collins as principal, and the defendants Motes and Hartman as sureties, on the bond they had executed on May 12, 1932. Plaintiff alleged that the various sums of money Collins, as guardian, had loaned to Norman Wehl, as narrated above, had been loaned without the approval of the probate court, and that the moneys of the ward had thereby been diminished in the sum of $2,117.23; and that defendant Collins was liable therefor, and that the defendant sureties Motes and Hartman were liable therefor to the limit of their bonded obligation, $2,000.

Later, on October 14, 1935, plaintiff filed an amended petition, the allegations of which were to the same effect as in the original petition, but containing an additional allegation as follows:

"That the defendant, George C. Collins, was the duly appointed, qualified and acting guardian of such insane person, but at the present time has resigned, but that his final report has not been approved nor his bond released. That the said George C. Collins resigned on the 4th day of October, 1933. That there was no formal order of acceptance by the probate court, final report approved or bondsmen released, but plaintiff herein was appointed to act as guardian *upon the probate court's oral acceptance* of such resignation." [Italics ours.]

The defendant sureties Motes and Hartman filed a demurrer to the amended petition, which was overruled. They then answered

with a general denial, questioned the legal sufficiency of the petition, admitted that defendant had served as guardian of Arthur Collins' estate and that he had resigned on October 4, 1933, and that his resignation had been accepted at that time.

Defendants further answered that on October 4, 1933, Collins had rendered his final account as guardian and filed it in the probate court, and requested an order discharging him and releasing his bondsmen; that on May 10, 1934, his final account was approved by the probate court; that he was ordered to turn over all property of his ward in his hands to his successor in office, and that he promptly obeyed that order; and that thereupon the probate court made a written order discharging defendant as guardian and releasing his bondsmen from liability. The order of discharge referred to in defendants' answer is the one set out above.

Defendants answered further that the order of discharge was a final order, that it had never been appealed from, that such order was *res judicata,* and that any right of action which plaintiff may have had against defendants was barred by the statute of limitations.

Defendants' answer further pleaded the facts of the action between *Gaston, Guardian* (Gaston, Administrator, substituted), *v. Norman Wehl,* to recover on the notes given to evidence the loans complained of, and alleged that the commencement of that action with the knowledge and approval of the probate court operated to estop the plaintiff administrator to claim that the loans to Norman Wehl were illegal; that said notes had been inventoried by the plaintiff administrator as part of the assets of the estate of Arthur B. Collins, deceased, and such inventory had been filed in the probate court.

Defendants further answered that the loans to Norman Wehl had been made by the defendant, George C. Collins, as guardian, before the bond sued on was executed on May 12, 1932; that notes evidencing such loans, referred to in plaintiff's petition, were either made before the bond sued on was executed or were renewal notes evidencing loans which antedated said bond; that the defendant sureties had no actual or constructive notice of such notes, nor that such loans had been illegally made, if they were unlawful in law or in fact; and defendants alleged that Collins as guardian committed no act of omission or commission after the execution of the bond sued on which injured or prejudiced the rights of Arthur B. Collins, or created any liability against these defendants.

Answering further, the sureties alleged that they signed the bond on representations on which they relied, that Arthur B. Collins was entitled to receive certain pension moneys from the United States government, and that it was the desire of the government that George C. Collins, as guardian, give a bond for the faithful administration of such pension moneys; that defendants signed said bond on that understanding and not otherwise; and that thereafter the federal government paid the guardian such pension moneys, and that all of which moneys were fully accounted for in the guardian's verified reports to the probate court; and that any and all objections ever made to such accounting had been considered and passed upon, and such account duly approved by the probate court.

The defendant sureties also filed a cross petition praying that if for any reason their answer was insufficient to state a complete defense, the guardian's bond which they signed be reformed to recite the true intent and purpose of its execution as pleaded in their answer.

While the issues in this action in the district court were being thus joined, the probate judge, without notice to defendants, made an order as follows:

"ORDER

"In the Matter of Arthur B. Collins, Insane Person.

"Now, on this 20th day of April, A.D., 1936, the attention of the court being called to a purported order of discharge dated May 10, 1934, of George C. Collins, as guardian of Arthur B. Collins, insane person, wherein a final report was approved, and an order made discharging him from the trust and releasing his bondsmen.

"Whereas, in the knowledge of the court no such order was signed on May 10, 1934; and whereas in fact it was not the intention of the court to discharge the bondsmen of the bond of George C. Collins, or release them of their obligations on the same. That if said order was signed by said court it was signed under a mistake of fact or in his understanding of the nature of the instrument signed, and was not in fact signed by the court until the 4th day of October, 1935, when said discharge was recorded as a record of the probate court of Mitchell county, Kansas.

"Wherefore, it is the order of the court that said purported order of discharge be set aside, and held for naught, and that the bondsmen on the bond of George C. Collins, guardian, be held accountable on the same for any acts for the said George C. Collins during the life of said bond.

"Witness my hand and seal at my office in Beloit, Kansas, this 20th day of April, A.D., 1936.                    J. M. RODGERS, *Probate Judge.*"

In a supplemental answer filed July 2, 1936, the defendant sureties alleged that on April 21, 1936, the action of *Gaston, Adminis-*

*trator, v. Norman Wehl,* referred to in their original answer, had proceeded to judgment in favor of the administrator in the sum of $1,699.69 on the *second* cause of action, which was based on Wehl's note for $1,467.38 and interest; and in the sum of $440.62 on the *third* cause of action, which was based on Wehl's note for $370.50 and interest; and that the court had dismissed the *first* cause of action at the request of the plaintiff administrator. Defendants pleaded that these facts operated as a further estoppel of plaintiff in this action against the defendant sureties.

In a *second amended* reply, filed July 3, 1936, plaintiff alleged that the order of discharge by the probate court of May 10, 1934, pleaded in defendants' answer, was not in fact signed on that date, but that said date was changed by some person unknown to the probate court—

"That same was not in fact the act, order or decision of the probate judge of Mitchell county, Kansas, but that the same was signed by him by mistake and without knowledge that the same was a purported discharge of the guardian and his bondsmen, and that if the probate judge had known the nature of the paper which he signed he would not in fact have signed any such purported document, and that said act was not in fact his order, judgment or decree nor did he intend to make any such order of discharge.

"Plaintiff further specifically answers and states that the matter was called to the attention of the probate court of Mitchell county, Kansas, orally by Leon W. Lundblade, attorney for plaintiff herein, and *the court, upon its own motion, set aside said purported discharge and release of the bondsmen.* A copy of said order is attached to the amended reply and is incorporated herein of reference as if fully set out." [Italics ours.]

To this second amended reply the defendant sureties interposed a demurrer on three grounds, (1) that the facts therein alleged were insufficient to meet the new matter alleged in the answer; (2) that it appeared on the face of the order of the probate court dated April 20, 1936, that such order was void and made without authority of law and contrary to law; and (3) that plaintiff was estopped to question the validity of the order of the probate court discharging Collins, guardian, and his bondsmen.

The demurrer was overruled, and defendants appeal.

The principal legal questions in this appeal center about the probate court's order dated May 10, 1934, discharging Collins as guardian and releasing his bondsmen, and the *ex parte* order of that court dated April 20, 1936, which was intended to rescind or, at least, to throw doubt and discredit on the order dated May 10, 1934, and the legal effect of these two orders on the issues in *this* action in the district court.

It is elementary law, of course, that a court has the right to protect the integrity of its own records. Any court of record has that indispensable authority. (15 C. J. 971 *et seq.*) A probate court is a court of record. (*Higgins v. Reed,* 48 Kan. 272, 29 Pac. 389, syl. ¶ 6; *Parsons v. McCabe,* 127 Kan. 847, 275 Pac. 173.) It has adequate authority to protect its records. (*Shoup v. Boler,* 130 Kan. 53, 56, 285 Pac. 554.) Necessarily such authority extends not only to the physical preservation and restoration of its records which may have been purloined, lost or mislaid, but to the restoration of the recitals of those records which may have been tampered with. (*Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530; id., 73 Kan. 404, 406-408, 85 Pac. 594.) But it is also settled law that final orders and judgments cannot be altered after the term at which they are rendered except in accordance with some pertinent provision of statute or by the mandate of a higher court on appeal. (*Schubach v. Hammer,* 117 Kan. 615, 232 Pac. 1041; *Heston v. Finley,* 118 Kan. 717, 720, 236 Pac. 841; *Thornton v. Van Horn,* 140 Kan. 568, 571, 37 P. 2d 1015.) The judicial business of a probate court must be conducted in orderly fashion, in regular monthly terms. (G. S. 1935, 20-1103.) When the monthly term of a probate court has ended, a decision or judgment of that court is a finality, and is not open to correction *in that court* on the mere ground of some alleged irregularity in procuring it. (*Wolfley v. McPherson,* 61 Kan. 492, 59 Pac. 1054; *Lewis v. Woodrum,* 76 Kan. 384, 92 Pac. 306; *Dobson v. Holmes,* 83 Kan. 476, 112 Pac. 131; *Sparr v. Surety Co.,* 99 Kan. 481, 162 Pac. 305.) A careful reading of *Bank v. Ross, Ex'x,* 90 Kan. 423, 133 Pac. 538, and *Clark v. Andrews,* 136 Kan. 23, 13 P. 2d 294, will take nothing from the binding force of the cases just cited.

Applying these familiar rules of law to the case at bar, it is clear that the probate court had no authority to alter the record after the term so as to make it recite a different judgment from the one it actually did pronounce theretofore. Nor do the available facts prove that the order of discharge dated May 10, 1934, was in fact tampered with. What does the order itself show? Merely that it was prepared on the assumption that the court would sign it on the 4th day of October, 1933, which was the date when Collins resigned as guardian. The figure and letters "4th" were plainly canceled and the figure "10" inserted, and the words and figures "October, 1933" were similarly and plainly canceled and the words "May,

1934" inserted. These alterations appear at the beginning and again at the close of the order of discharge, over the signature of the probate judge. Certainly there is nothing inherently suggestive of fraudulent tampering with dates in the order of discharge. In *Sheip & Co. v. Price, Page & Co.*, 3 Pa. Superior Ct. 1, the verity of a prothonotary's record was called in question. The court said:

"Every court of record is the guardian and judge of its own records; it is clothed with full power to control and inquire into them and set them right if incorrect, but when a court considers a record without attempting to reform same in an appropriate and orderly way, every presumption of verity must be accorded such record and apparent alterations and interlineations made by the prothonotary should be construed as mistakes corrected as soon as made rather than as a tampering with a record, which would be unlawful.

"It is error to quash a writ of attachment, on allegations impeaching a record, by an affidavit alleging alterations thereof, while permitting the record to stand. The proper practice would be for the court to inquire, as it had power to do, into the impeachment of the record and amend or correct it if tampered with, and upon the record if amended quash the writ if warranted. A record may not be inferentially impeached." (Syl. ¶¶ 3, 4.)

Assuming for the moment that legal significance could be attached to the order of April 20, 1936, what does it state? It recites that in the knowledge of the court no such order was signed on May 10, 1934. But the court immediately weakens the force of this declaration by adding "if said order was signed by said court it was signed under a mistake of fact," etc. So the court was not sure that it had not signed the order. Next the court declares that the order "was not in fact signed *until the 4th day of October, 1935, when said discharge was recorded*," etc. If this recital has any legal significance it makes it clear that eventually the court did sign the order of discharge—that it signed it on October 4, 1935. But this declaration of the court or judge virtually leaves the order of discharge intact and available as a defense in this action against the guardian's sureties. Certainly an order of discharge signed on October 4, 1935, could not be set aside and held for naught, either legally or equitably, on an *ex parte* order, without notice to the parties concerned, on April 20, 1936, more than six months after it was admittedly made. (*Fry v. Rush*, 63 Kan. 429, 65 Pac. 701, syl. ¶ 5.)

There are other good objections to the consideration of the matters alleged in plaintiff's second amended reply, which are predicated on the order of April 20, 1936, and which are relied on to withstand the order of discharge dated May 10, 1934, pleaded in defendants' answer. Those allegations constitute a collateral attack on that

order (*Smith v. The Eureka Bank,* 24 Kan. 528, 530) ; and under all the rules of good pleading the order could not be impeached collaterally. In *Sparr v. Surety Co.,* supra, the action was to recover against a guardian for an insane person and the surety on her bond. On the presentation of her final account, which the probate court approved, the guardian was discharged. Some two years later the ward's disabilities were removed, and he filed exceptions to the final account; and the probate court gave notice to the guardian and her surety that a hearing would be granted on the exceptions. At that hearing the court made a finding that the guardian had failed to account for the sum of $500, and set aside its order of discharge. Thereafter an action was begun against the surety on the bond. The pertinent facts were developed in the pleadings, and judgment was entered in favor of the defendant surety. On appeal the judgment was affirmed, this court saying:

"The order made by probate court discharging and releasing the guardian was a final judgment of a court of competent jurisdiction and not subject to collateral attack. However erroneous it may have been, it cannot be held void. (*Musick v. Beebe, Adm'r,* 17 Kan. 47; *Smith v. The Eureka Bank,* 24 Kan. 528; *Davis v. Hagler,* 40 Kan. 187, 19 Pac. 628; *Proctor v. Dicklow,* 57 Kan. 119, 45 Pac. 86; *Wolfley v. McPherson,* 61 Kan. 492, 59 Pac. 1054.) There are different methods by which the final settlement might have been attacked for fraud. Plaintiff might have proceeded under the provisions of sections 596 and 605 of the civil code. (*Wolfley v. McPherson,* supra.)" (*Sparr v. Surety Co.,* 99 Kan. 481, 483, 162 Pac. 305.)

The pertinent syllabus reads:

"An order of the probate court approving a final settlement of the guardian of an insane person and releasing and discharging the guardian is a final judgment of a court of competent jurisdiction and is not subject to collateral attack." (Syl. ¶ 1.)

In the similar case of *Schmidt v. Simmons,* 136 Kan. 666, 17 P. 2d 835, this court said:

"The rule was early established by this court that in an action upon the official bond of an executor the judgment of the probate court concerning the accounting of the administrator and all matters included therein are conclusive as against collateral attack (*Smith v. Eureka Bank,* 24 Kan. 528; *Jones v. Jones,* 125 Kan. 403, 408, 265 Pac. 66, and cases there cited), and this adjudication is held to extend to and is binding upon the sureties on the official bond. (*Sparr v. Surety Co.,* 99 Kan. 481, 162 Pac. 305; *Oberst v. Mooney,* 135 Kan. 433, 439, 10 P. 2d 846.)" (p. 669.)

See, also, *Donley v. Goll,* 132 Kan. 746, 747, 297 Pac. 426; *Fletcher v. Holcomb,* 142 Kan. 177, 180, 45 P. 2d 1053; Vanfleet on Collat-

eral Attack on Judicial Proceedings, 5-7, 29; 1 Freeman on Judgments, 5th ed., 601-604, 606-609, 664, 719. In the well-known work last mentioned (p. 774) it is said:

"Probate courts and other courts empowered by law to entertain legal controversies or proceedings respecting estates of decedents exercise a jurisdiction limited as to subject matter but which when invoked in the manner and within the limitations prescribed in the statutes will lend to the court's orders and judgments all the usual presumptions of regularity and sustain them against any attempted impeachment that does not disclose a loss or excess of the jurisdiction acquired. When a subject matter within the general class over which their power extends is presented to such courts by appropriate application or pleading, they may determine the existence of the essential jurisdictional facts and their conclusions in this respect cannot be questioned collaterally, and in general their adjudications made within their defined jurisdiction are entitled to the same conclusiveness as are those of other courts."

And in the same work (pp. 846, 847) it is said:

"Various questions arising upon collateral attack of probate decisions have been touched upon from time to time throughout this chapter. There is nothing in the nature or constitution of such tribunals that would withdraw their proceedings or determinations from the rule of immunity from collateral attack. . . . If the record shows jurisdiction has once attached, subsequent irregularities will not render the proceedings void, and the ensuing order, judgment, or decree, of whatsoever character, will be sustained by all the favorable presumptions, and be as free from collateral impeachment as is a determination of any other court."

In view of the foregoing it is clear that the answer of the sureties pleaded a good defense which plaintiff's second amended reply did not meet, and defendants' demurrer thereto should have been sustained. And this conclusion makes it unnecessary to determine other questions arising on the record.

The judgment of the district court must be reversed and the cause remanded with instructions to sustain the defendants' demurrer to the new matter pleaded in plaintiff's second amended reply.

And since the demurrer searched the entire record, it is clear that in no event can plaintiff now prevail; and as it would confer no favor to the litigants to continue the litigation, final judgment should be ordered. (*Security Nat'l Bank v. Crystal Ice & Fuel Co.*, 145 Kan. 899, 909, 67 P. 2d 527.)

Reversed, and judgment for defendants directed.