No. 34,680

JAMES J. BROWN, *Appellee,* v. FRANK SCHRECKLER, *Defendant,* and THE MARYLAND CASUALTY COMPANY, *Appellant.*

(100 P. 2d 741)

Opinion filed April 6, 1940.

*Allen B. Burch* and *Henry E. Martz,* both of Wichita, for the appellant.

*U. S. Weary,* of Junction City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover against an executor and the surety on his bond. The plaintiff's demurrer to the bonding company's answers was sustained, and it appeals:

Plaintiff's petition alleged that he was the sole heir and the sole distributee of the estate of James Brown, deceased, whose last will was admitted to probate in the probate court of Geary county, Kansas, in April, 1934; that defendant Frank Schreckler was the duly appointed executor of the estate of James Brown, deceased, and had qualified by giving a bond in the sum of $10,000, executed by the defendant, Maryland Casualty Company, hereafter referred to as the casualty company, a copy of the bond being attached as an exhibit to the petition; that the executor in due course had filed his final account and published his notice of final settlement, and in due course had filed his second supplemental final settlement, which came regularly on for hearing on May 11, 1938, at which time the probate court entered its final judgment adjudging that the executor pay over immediately to the plaintiff herein the sum of $1,641.15 as the balance remaining in his hands as executor on final settlement. A copy of the order was attached to the petition and will be referred to later. It was also alleged that on May 12, 1938, the plaintiff made demand in writing on the executor and the casualty company for the above sum, and that immediately thereafter both of the defendants acknowledged the demand, and refused to pay, but in lieu thereof on or about May 13, 1938, the executor tendered the sum of $474.48 as a partial payment only.

The order of the probate court of May 11, 1938, shows the matter for hearing was the executor's final report, his supplement to final report and his second supplemental report, and that the court found—

"It has heretofore made temporary allowances to the executor Frank Schreckler, without any hearing had thereon upon notice fixed by the court;

that pursuant to the decree of the district court of Geary county, Kansas, and affirmed by the supreme court of the state of Kansas, said executor should be surcharged against said temporary allowances in the total sum of $1,166.67; that so surcharged said accounts are in all respects true and correct;"

After further findings with respect to credits not here involved and that the distributive share to the sole heir at law, James J. Brown, was $1,641.15, the probate court ordered:

"That the reports be approved as herein found, except that part of the second supplemental final report which attempts to excuse said executor from the immediate payment of the amount found herein to be due the sole heir-at-law; that said executor is hereby given credit for all disbursements heretofore authorized by this court, except as to allowances which have been surcharged or set aside and disallowed in this final order, in the total sum of $1,166.67; that the executor pay the court costs in the district court of $5.03, and the premium on his bond of $48; that the sole and only heir at law of the said James Brown, deceased, is his nephew, James J. Brown, of Pittston, Pa.; that the said executor pay over immediately to the said James J. Brown the sum of $1,641.15 shown by said accounts and reports to be due said heir-at-law as the final distributive share of said estate; that said executor and his bondsmen be discharged upon the payment to said James J. Brown of said sum of $1,641.15 and the two items herein mentioned, and the filing of the receipts thereof in this court."

The answer of the casualty company admitted all of the allegations of plaintiff's petition and affirmatively set up five defenses, viz.:

1. That the executor tendered to plaintiff $474.48 as a *pro tanto* payment and plaintiff refused to accept.

2. That the remaining balance plaintiff claims is due, $1,166.67, was voluntarily paid by plaintiff to the executor and was not at any time a part of the assets of the estate of James Brown, deceased; that the payment was made without the knowledge or consent of the casualty company; that the payment was made by the plaintiff to the executor, was made in settlement of a suit by the executor against plaintiff in the state of Wyoming upon a promissory note for $1,750 voluntarily given by plaintiff to the executor for the purpose of inducing the executor to enter into an unlawful agreement with plaintiff to withdraw an application which the executor had filed in Wyoming to be appointed as executor of James J. Brown's estate in that state; that after the suit was brought plaintiff herein voluntarily paid the executor $1,750, who paid his attorneys $585.33 and retained $1,166.67 as his personal property; that plaintiff was aware of the unlawful nature of the contract, but notwithstanding volun-

tarily paid the $1,750 to the executor, which sum, less the attorney's fees, is the surcharge against the executor referred to in the probate court's order of May 11, 1938; that plaintiff could have protected himself, but voluntarily paid the money to the executor without the knowledge or consent of the casualty company and is guilty of constructive fraud as against the casualty company and by reason of plaintiff's refusal to accept the $474.48 tendered by the executor plaintiff is not entitled to any recovery from the casualty company.

3. That the unlawful agreement between the plaintiff and the executor placed each in *pari delicto,* and the agreement having been induced by plaintiff without knowledge or consent of the casualty company, the casualty company cannot in equity be required to reimburse plaintiff, and the probate court was without jurisdiction to determine the aforesaid sum of $1,166.67 was a part of the assets of the estate of James Brown, deceased, and that the judgment was not binding on the casualty company.

4. That plaintiff knew of the relationship of principal and surety between the executor and the casualty company, but notwithstanding failed to notify the casualty company of the unlawful transactions between him and the executor and deprived the casualty company of all opportunity to protect itself after plaintiff had paid the executor the $1,750 until long after the executor had disposed of that sum; that plaintiff knew the executor intended to dispose of that sum, suggested he use it for his personal use, and by reason thereof plaintiff is estopped from asserting any claim against the surety on the executor's bond.

5. That on June 21, 1938, plaintiff filed an action in the district court of Geary county against the executor and the casualty company seeking recovery upon the same or similar facts as alleged in the present petition; that the casualty company was served with process and compelled to appear in defense; that after the expiration of six months plaintiff voluntarily dismissed that action and filed the present action; that by reason of the above the casualty company was placed in the position of having to defend a direct action against it during the time when it could and would have appealed from the order of the probate court made May 11, 1938; that therefore it did not appeal from that order, but filed its defense in the direct action.

Thereafter the casualty company amended its answer by adding thereto four additional allegations of defense, viz.:

1. That the probate court of Geary county was without jurisdiction to determine that the sum of $1,166.67 was part of the assets of the estate of James J. Brown, deceased, and any judgment to that effect was not binding upon and was null and void as to the casualty company.

2. It would have been futile and useless for the casualty company to have appealed from the order of the probate court made May 11, 1938, for the reason that order was made in compliance with the judgments of the district court of May 8 and 17, 1937, which were subsequently affirmed by the supreme court, all as set forth in the petition filed in the action brought by the plaintiff against the executor and the casualty company on June 21, 1938, that petition and exhibits attached being made a part of the answer.

3. That the casualty company was not a party to the judgments of the district court of March 8 and 17, 1937, against the executor and was not a party to the appeal to the supreme court.

4. Even though such judgment may be binding upon the executor and upon the probate court, nevertheless it is null and void and of no force against the casualty company.

The executor made no defense. The plaintiff demurred to the answer as amended of the casualty company, the demurrer was sustained, and on September 11, 1939, judgment was rendered against both defendants for the sum of $1,772.43, interest and costs. The casualty company appeals.

Substantially all of the contentions made by the casualty company in support of its argument that the trial court erred are based on the assumption that included in the amount found due to the plaintiff as distributee of the estate of James Brown, to wit, $1,641.15, was a surcharge of $1,166.67, and that it represented the proceeds of the unlawful transaction denounced in *In re Estate of Brown*, 147 Kan. 395, 76 P. 2d 857, and was no part of the general assets of the estate as included in the inventory, and which the surety bond was given to secure. If the pleadings disclose that assumption is not true, much of the argument made requires no comment.

It is to be noted the answer admits the allegations of the petition, and that attached to both petition and answer are a number of exhibits. From all of these it appears that James Brown died testate on April 3, 1937, and that upon probate of his will Frank Schreckler was appointed executor and qualified, the casualty com-

pany being surety on his bond. In April, 1936, he filed his final account showing that he had collected assets amounting to $3,433.36, and he claimed credit for expenses of a trip to Riverton, Wyo., in April, 1935, in the amount of $155.45, for an allowance of executor's and attorney's fees in May, 1935, in the amount of $1,000, and expenses of another trip to Wyoming in June, 1935, in the amount of $79.73, or a total of $1,235.18. Upon the hearing of this account, the question of surcharge on account of the unlawful dealings with James J. Brown in Wyoming first appeared. The probate court refused to order any surcharge and an appeal was taken to the district court, which found that the executor went to Wyoming in connection with matters having to do with the estate of James Brown, under the order of the probate court and at the expense of the estate of James Brown, and there withdrew his application to be appointed executor in the state of Wyoming, receiving from James J. Brown, plaintiff herein, the sum of $1,750, of which sum he personally received the sum of $1,166.67 net after payment of attorney's fees. The court further found as quoted in *In re Estate of Brown, supra,* l. c. 397, and further, that all allowances made for attorney fees by the probate court were properly made. This was followed by an order that Schreckler be surcharged on his accounts in the sum of $1,166.67. As has been stated, this court affirmed the order of the district court. Following our decision, the executor filed in the probate court on May 11, 1938, his second supplemental final account showing a balance on hand as of April 8, 1936, of $985.17, the surcharge of $1,166.67, and claiming credit for certain items not in dispute, and leaving a balance of $1,694.18. On May 11, 1938, there came on for hearing in the probate court the executor's final report, his supplement to final report and his second supplemental final report, and that court found that it had theretofore made temporary allowances to the executor, without any hearing had thereon upon notice fixed by the court; that pursuant to the decree of the district court, as affirmed by the supreme court, the executor should be surcharged against the temporary allowances the sum of $1,166.67, and that so surcharged the accounts were correct. After allowing further subsequent items of costs not shown in the final account and not in dispute here, the trial court found

the final distributive share to be $1,641.15. We think it clear from the above summary that the surcharge of $1,166.67 did not increase the estate, nor did it bring to the executor moneys with which he did not otherwise stand charged. Under *ex parte* orders previously made, he had prior to June 5, 1935, received allowances for expenses and his own and attorney's fees amounting to $1,235.18. The probate court specifically placed the surcharge of $1,166.67 against these temporary allowances.

The hearing at which the above findings were made was on final settlement of the estate pursuant to G. S. 1935, 22-904, 22-906. The order finding the distributive share due and the person entitled thereto was a final order binding upon all persons interested in the estate, unless appeal was taken within thirty days as provided by G. S. 1935, ch. 22, art. 11. This order was not appealed from and became final, and was as to all matters included in it conclusive as against collateral attack by the executor or his surety, except for fraud. (See *Schmidt v. Simmons,* 136 Kan. 666, 17 P. 2d 835, and cases cited, and *Gaston v. Collins,* 146 Kan. 449, 457, 72 P. 2d 84.) The generally accepted rule is to the same effect. (24 C. J., p. 1079 [Executors and Administrators, § 2589].) The pleadings disclose that the day after the above order was made, demand was made on the executor and the casualty company for payment of the amount due, but no appeal was perfected by any party in interest. After the expiration of the period in which an appeal could be taken and on June 21, 1938, the first action to recover on the bond was filed. After pending six months that action was dismissed and the present action filed.

The casualty company contends that it did not have to appeal within thirty days, but that under G. S. 1935, 22-915, it had six months to have the account corrected, but by reason of the filing of the first suit on June 21, 1938, and which was not dismissed until that period expired, it did nothing in the probate court. It also contends the probate court had no jurisdiction to make the findings.

It may be observed there is no dispute but that statutory notice of final settlement was given to all parties interested under the appropriate statute. G. S. 1935, 22-915, on which the casualty company now relies, but with which it did not comply even if applicable, is a section of the old act with reference to executors and administrators (G. S. 1868, ch. 37) and was peculiarly effective at the times when final settlements were deferred for three years after

qualification of the executor or administrator, and when annual settlements were required to be made without formal legal notice to creditors and others interested, and were to be distinguished from final settlements made consequent to formal legally required notice. (See *Musick v. Beeke, Adm'r,* 17 Kan. 47.) The original three-year period was reduced to two years in 1911 and to one year in 1925. But we need not pursue such a discussion, for here the settlement involved was a final settlement and the casualty company had notice.

Neither may it be said the probate court was without power and jurisdiction to hear and dispose of the matter on final settlement. It is clear that allowances to the executor were made without notice and prior to the time any account was pending awaiting hearing. When the matter finally came on, the probate court found such allowances should be surcharged in the amount ordered by the district court. The pleadings disclose beyond a doubt the executor had used a portion of the estate to his own advantage, and to the injury of the real parties in interest. Under such circumstances—

"It shall be the duty of the court upon any such hearing to assess the amount found by the court to be a proper charge therefor, against such executor or administrator, and thereon such executor or administrator shall be liable on his bond therefor." (G. S. 1935, 22-919.)

The pleadings disclose not only the above, but also that the executor had neglected to pay to the distributee the amount ordered. Under such circumstances, an action on his bond may be maintained. (G. S. 1935, 22-1002.)

We conclude that the pleadings under scrutiny disclose that the casualty company's contention that the surcharge against the executor in the amount of $1,166.67 in effect charged him with moneys not covered by the bond cannot be sustained; that on the contrary all that the probate court did was to assess the surcharge against allowances previously made, which allowances were paid out of assets with which the executor undisputedly stood charged under the inventory, and secured by the bond; that on hearing of the final settlement the probate court had full power and jurisdiction to make the order that it did, and that order became final and conclusive after thirty days, no appeal having been taken therefrom.

Some contention is made that the tender of $474.48 by the executor was a *pro tanto* release of the casualty company. Supplementing what has been said, the pleadings disclosed that the second

supplemental final report was filed. It contained a statement that the executor actually had on hand only the sum of $527.51, and that he had spent the sum with which he stood surcharged. He sought an order of the court permitting him to use what funds he had to pay remaining costs and to apply on the amount due the distributee, the balance remaining due to the distributee of $1,166.67 to be paid at the rate of $25 per month. The probate court very properly refused to make any such order and on the contrary ordered the executor to pay the entire distributive share immediately, as is shown by the order as hereinbefore set out. After the plaintiff had demanded of the executor and the casualty company payment of the amount found due him, the executor tendered the remaining cash on hand of $474.48. As a general rule, a tender, to be effective, must include everything to which the creditor is entitled. (See annotation 5 A. L. R. 1226.) And in order to discharge a surety, the tender must be legally sufficient in amount (50 C. J., p. 108 [Principal and Surety, § 185]). The tender was no compliance either with the probate court's order or with the demand of the plaintiff and we think under the circumstances here obtaining cannot be said to be a *pro tanto* release of the casualty company.

The casualty company also makes some contention that the plaintiff's conduct was fraudulent and that he is estopped from asserting any claim against it. We shall not discuss these contentions. On the assumption that either could be sustained, it is quite apparent the facts on which they are based were well known prior to the time the final settlement was heard in the probate court. No complaint was made then and we think it too late now.

The judgment of the trial court is affirmed.